Filed 1/9/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re R.T., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY, | |
| Plaintiff and Respondent, | A140144 |
| v. | |
| PAULA T. et al., | (Alameda County Super. Ct. No. SJ12019365) |
| Defendants and Appellants; | |
| D.K. et al., | |
| Moveants and Appellants. | |
| In re R.T., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY, | |
| Plaintiff and Respondent, | A140781 |
| v. | |
| PAULA T. et al., | (Alameda County Super. Ct. No. SJ12019365) |
| Defendants and Appellants. | |

Before the court are appeals from proceedings in which the social services agency and the juvenile court disregarded the statutory mandate that preference in the placement of a child removed from the custody of his parents be given to qualified family relatives. Not only was this statutory mandate disregarded, but the parents were denied their right

1

to relinquish the child for adoption by relatives without an appropriate assessment of whether relative adoption was in the child's best interest.[1] Although removal of the child and the parents' attempt to place him with a relative began shortly after the child's birth, the proceedings were permitted to extend to the point that the child is now almost two and one-half years of age. The errors reflected in this record compel this court to remand for further proceedings conducted under proper standards, although effective redress may or may not be possible given the passage of time spent with other caretakers and the child's current best interest. We leave that difficult determination for consideration by the juvenile court on remand.

## I. Statement of Facts

Paula T. (mother) and David D. (father) appeal from an order terminating their parental rights and placing their minor son R.T. for adoption (Welf. & Inst. Code, § 366.26), and from an earlier order denying their motion to direct the Alameda County Social Services Agency (agency) to accept their relinquishment of R.T. for adoption by paternal relatives, D.K. and R.K. (aunt and uncle). (Fam. Code, § 8700) Aunt and uncle also appeal. Aunt and uncle join in the parents' challenge to the rejected relinquishment and also contest an order denying their motion to set aside the dispositional order for failure to apply the statutory preference for placement of a dependent child with relatives. (Welf. & Inst. Code, § 388.)[2] These appeals have been consolidated.

R.T. was born drug exposed to methamphetamine, marijuana, opiates, and benzodiazepines. Days later, on July 31, 2012, the agency filed a juvenile dependency petition. (§ 300.) The petition alleged the parents have a history of drug abuse and domestic violence and recently failed to reunite with another son, Gabriel, who was a dependent child of the court. (§ 300, subds. (b) & (j).)

---

[1] The parents raise other issues that are rendered moot and need not be considered in view of the disposition we direct.

[2] All further section references are to the Welfare and Institutions Code, except as indicated.

Gabriel was 16 years old when he was removed from his parents' home in 2011 and was almost 18 years old at the time of R.T.'s birth. The parents separated when Gabriel was three years old and renewed their relationship years later, when he was a teenager. Gabriel told a social worker that renewal of his parents' relationship created problems at home. Gabriel was placed with Victoria D., father's ex-girlfriend with whom he had three children close in age to Gabriel. The agency reported that Victoria had known Gabriel "since he was an infant and had informally cared for him at times throughout his childhood." The agency deemed Victoria and her husband to be Gabriel's nonrelated extended family members. (§ 362.7.)

Over father's objection, the agency placed R.T. in the home of Victoria and her husband. On the day R.T. was taken from the hospital and placed with Victoria, father told the agency he had a "negative relationship" with her and wanted his son placed with him or a relative. On that day or shortly afterward, father identified two of his sisters (paternal aunts) to be assessed for placement. No later than August 6, 2012, when R.T. was just two weeks old, the paternal aunts requested placement of the child with one of them. By statute, "preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative." (§ 361.3, subd. (a).) The agency initiated home safety inspections "as per" agency "policies," but told the paternal aunts it favored "keeping the child in his current placement." An agency social worker later testified that the agency never considered the paternal aunts for placement.

On August 13, 2012, the agency filed a report in advance of the jurisdictional and dispositional hearing recommending that R.T. be declared a dependent child and the parents denied reunification services because they failed to reunite with their older son. (§ 361.5, subd. (b)(10).) The agency asked the court to schedule a permanency planning hearing to order adoption, noting that Victoria and her husband were "open to adoption."

The combined jurisdictional and dispositional hearing was held on August 27, 2012. The agency attorney argued that R.T. was "thriving" with Victoria and should remain in her care with the "specific goal" that he be adopted by her and her husband. The child's counsel also urged the court to keep R.T. with his brother in Victoria's home.

One of the paternal aunts testified at the hearing that the agency had discouraged her request for placement, but she remained interested in assuming custody of the child and adopting him. Both parents, through their attorneys, urged the court to place the child with one of the paternal aunts. The requests were denied. The court adopted the agency's recommendations that the parents be denied reunification services because they failed to unite with their older son (§ 361.5, subd. (b)(10)), that placement remain with Victoria, and that a section 366.26 permanency hearing be scheduled. Without waiting for completion of the relatives' home studies, the court ordered a "permanent plan of placement" with Victoria and her husband.

The paternal aunts' home inspections were completed by October 2012, when R.T. was three-months old, and their homes approved. The agency refused to consider moving the child from his placement with Victoria and there is no indication in the record that the agency ever evaluated the relatives for placement under the relevant statutory criteria. (§ 361.3, subd. (a).) In late November, when R.T. was four months old, aunt and uncle filed a motion to modify R.T.'s placement, asserting they had been denied preferential consideration for placement and expressing their desire for custody and adoption. (§ 388.) A few days later, the agency filed a report for the permanency planning hearing in which it recommended termination of parental rights and adoption by Victoria and her husband.

A hearing on the modification motion was conducted over several intermittent days extending from February to September 2013. Multiple witnesses testified, including agency social workers, mother, Victoria and her husband,[3] aunt and uncle, and a child psychologist.

R.T.'s case worker testified that an agency placement worker conducted a home assessment of the paternal aunts because the agency is "required to do relative assessments" but the agency never considered the paternal aunts for placement, and told them so. The case worker was asked "Have you ever thought or even considered that

_____

[3] Victoria and her husband were granted de facto parent status in April 2012.

4

[aunt and uncle] could be a potential placement of their nephew" and she replied, "No, I haven't considered that."

The case worker's supervisor testified that it is the agency's policy to consider relative placements, but relative placements do not receive preference. The supervisor said assessments are done on a "case-by case" basis and the critical factor in placing R.T. with Victoria was the presence of a sibling and half-siblings in the family. The supervisor acknowledged that the siblings and half-siblings were, at the time of the hearing, adults no longer living at home or about to leave the home shortly, but assumed R.T. "would still have access and contact with his siblings" if adopted by Victoria. The supervisor also said placement with Victoria was equivalent to a relative placement "because there is a full-blooded relative sibling in the home."

The court did not rule on aunt and uncle's modification motion until September 30, 2013, when R.T. was 14 months old. The court rejected the applicability of the relative preference under section 361.3 and denied the motion.

At the same time that the court was considering the motion to modify R.T.'s placement, the parents pursued efforts to relinquish their parental rights and to designate the aunt and uncle as the adoptive parents. Parents may relinquish a child for adoption by designated individuals. (Fam. Code, § 8700, subds. (a) & (f).) The right exists for a dependent child under the jurisdiction of the juvenile court. (*Id*., subd. (i).) On February 23, 2013, mother and father executed relinquishment forms and, on March 4, submitted the forms to the agency. The agency refused to sign acknowledgement of receipt. The agency told the parents it would accept relinquishment if they designated Victoria and her husband as the adoptive parents but would not accept the parents' choice for adoption.

On March 22, 2013, the parents filed a motion asking the court to review and correct the agency's "failure to comply with the law and the parents' rights to relinquishment." The agency opposed the motion, arguing it has unfettered discretion to refuse a parent's relinquishment of parental rights and the court is without power "to override and order the agency to accept it." The court did not hear and resolve the motion until October 2013, at which time the court found that a relinquishment of parental rights

5

is not effective unless and until an adoption agency accepts it. The court said it lacked authority "to require the agency to accept a relinquishment" and denied the motion. The parents and aunt and uncle appealed denial of the motion. Aunt and uncle also appealed the earlier denial of their modification motion in which the court rejected applicability of the relative placement preference.

The section 366.26 permanent plan hearing was held over several days between October 2013 and January 2014. On January 9, 2014, the juvenile court terminated parental rights and ordered R.T. placed for adoption.

## II. Discussion

A. *The agency and the court failed to apply the statutory preference for placing a dependent child with a relative.*

The agency and the court failed to properly apply the statutory preference for placing a dependent child with a relative. Juvenile dependency laws are meant "to preserve and strengthen the minor's family ties whenever possible." (§ 202, subd. (a).) Accordingly, when a child is adjudged a dependent of the court and removed from the parents' physical custody, "preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative." (§ 361.3, subd. (a).) " 'Preferential consideration' means that the relative seeking placement shall be the first placement to be considered and investigated." (§ 361.3, subd. (c)(1).) The statute does "not supply an evidentiary presumption that placement with a relative is in the child's best interests" but it does require the social services agency and juvenile court to determine whether such a placement is appropriate, taking into account multiple factors including the best interest of the child, the parents' wishes, and the fitness of the relative.[4]

---

[4] "In determining whether placement with a relative is appropriate, the county social worker and court shall consider, but shall not be limited to, consideration of all the following factors: [¶] (1) The best interest of the child, including special physical, psychological, educational, medical, or emotional needs. [¶] (2) The wishes of the parent, the relative, and child, if appropriate. [¶] (3) The provisions of Part 6 (commencing with Section 7950) of Division 12 of the Family Code regarding relative placement. [¶] (4) Placement of siblings and half siblings in the same home, if that placement is found to be in the best interest of each of the children as provided in Section 16002.

(*In re Stephanie M.* (1994) 7 Cal.4th 295, 320-322.) "The correct application of the relative placement preference places the relative 'at the head of the line when the court is determining which placement is in the child's best interests.' [Citation.]" (*Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1033.)

     *1. The agency failed to notify relatives of their option to participate in the dependent child's placement.*

The agency here disregarded the statutory mandate for relative preference. Upon removing R.T. from his parents' custody, the agency was required to identify and locate adult relatives for possible placement, including relatives suggested by the parents. (§ 309, subd. (e)(1).) On the day R.T. was taken into protective custody, father asked for placement with a relative. On that day or soon after, he identified two of his sisters for placement. Despite knowing the names and addresses of these paternal relatives, the agency failed to provide them with written notice that is mandated by the statute to explain "the various options to participate in the care and placement of the child" and the services and support available to them. (§ 309, subd. (e)(1)(B).) The agency reports that it provided an oral advisement of "the placement process" to the paternal aunts within a couple weeks of assuming custody of R.T., but the extent of that advisement is unstated. The agency argues its oral advisements negate any harm caused by its failure to provide

---

[¶] (5) The good moral character of the relative and any other adult living in the home . . . . [¶] (6) The nature and duration of the relationship between the child and the relative, and the relative's desire to care for, and to provide legal permanency for, the child if reunification is unsuccessful. [¶] (7) The ability of the relative to do the following: [¶] (A) Provide a safe, secure, and stable environment for the child. [¶] (B) Exercise proper and effective care and control of the child. [¶] (C) Provide a home and the necessities of life for the child. [¶] (D) Protect the child from his or her parents. [¶] (E) Facilitate court-ordered reunification efforts with the parents. [¶] (F) Facilitate visitation with the child's other relatives. [¶] (G) Facilitate implementation of all elements of the case plan. [¶] (H) Provide legal permanence for the child if reunification fails. [¶] . . . [¶] (I) Arrange for appropriate and safe child care, as necessary. [¶] (8) The safety of the relative's home. For a relative to be considered appropriate to receive placement of a child under this section, the relative's home shall first be approved pursuant to the process and standards described in subdivision (d) of Section 309." (§ 361.3, subd. (a).)

written notice, but the statute explicitly requires "written notification" and, in addition, oral notification "whenever appropriate." (§ 309, subd. (e)(1).) There is little reason to believe that the oral advisements sufficiently informed the relatives of the many aspects of the placement process that the statute requires be conveyed in writing. (*Ibid.*)

2. *The agency and the court failed to consider relatives for placement.*

More fundamentally, in addition to its failure to provide written notification, the agency failed to consider the relatives for placement when they came forward. (§ 361.3.) A relative's home was not "the first placement to be considered and investigated," as the statute requires. (§ 361.3, subd. (c)(1).) Worse, a relative's home was never given good faith consideration. When R.T. was first taken into protective custody, the agency placed him with Victoria, with whom the child's teenaged brother lived. The significance of Gabriel's presence in Victoria's home is questionable since the record indicates he was about to leave for college; nonetheless, sibling relationships are properly considered in making placement decisions (§§ 361.2, subd. (j), 16002), and the initial placement may have been sensible as a temporary measure. Be that as it may, the temporary placement of the infant did not relieve the agency of the obligation to honor the statutory preference for relative placement. The agency failed thereafter to investigate and consider relative placement and weigh it against the benefit of placing the infant in the home where his much older brother had been placed. The agency knew of the paternal aunts' interest in placement no later than August 6, 2012, when the child was less than two-weeks old. At the paternal aunts' insistence, the agency assessed their homes for safety but did so without any intention of determining if relative placement was appropriate under the statutory criteria. (§ 361.3, subd. (a).) An agency report states that it assessed the relatives' homes "per Social Services Agency policies" but "[b]oth aunts were informed at the beginning of the approval process that there [were] no plans to move [R.T.] from his current placement." There is nothing in the record to indicate that a relative placement evaluation under statutory standards was performed. R.T.'s case worker testified she never considered the relatives for placement and said the agency's "plan from day one

8

has only been to consider adoption of this child" by Victoria and not his paternal relatives.

The paternal aunts' home studies were not yet complete when the agency proceeded with a combined jurisdictional and dispositional hearing on August 27, 2012, at which the agency recommended placement with Victoria and the scheduling of a section 366.26 permanency hearing. The court ordered a "permanent plan of placement" with Victoria and her husband without waiting for completion of the relatives' home studies.

The court found Victoria to be a nonrelative extended family member (NREFM), under section 362.7, which is questionable. At the time relevant here, an NREFM was defined as "any adult caregiver who has an established familial or mentoring relationship with the child."[5] (Stats. 2001, ch. 653, § 12, p. 5203, eff. Oct. 10, 2001.) The law is intended "to encourage foster home placements in the communities where the minors have been raised through the creation of opportunities for placement of children with persons who, while not relatives, have a close relationship with the dependent minors." (Stats.1995, ch. 509, § 3, p. 3935.) Victoria had no relationship with R.T. when he was placed with her. She was the mother of R.T.'s half-siblings and had been previously adjudged an NREFM of Gabriel. Under the law existing at the time, NREFM status was not conferred through "a mutual relative when there is no existing relationship between the child and the individual seeking NREFM status." (*In re Michael E.* (2013) 213 Cal.App.4th 670, 675.) The agency did nothing to verify Victoria met the standards of an NREFM of R.T., as statutorily required, and simply asserted she was an NREFM by virtue of her relationship with the child's sibling and half-siblings.[6]

---

[5] The statute was first enacted in 1995. (Stats. 1995, ch. 509, § 6, p. 3936.) The version of the statute applicable here was adopted in 2001. (Stats. 2001, ch. 653, § 12, p. 5204, eff. Oct. 10, 2001.) The statute was subsequently amended in 2013 to broaden the definition of an NREFM. (Stats. 2013, ch. 294, § 1.)

[6] Some agency social workers also believed placement with Victoria was equivalent to a relative placement "because there is a full-blooded relative sibling in the home." This is

9

Even if Victoria were properly considered an NREFM, it was error to award her permanent placement of R.T. without first considering a relative's request for placement. "A social worker is required to consider an NREFM for placement only when there is not a custodial parent, a relative given preferential consideration or a relative who is willing and able to provide appropriate care for the child. [Citations.]" (*In re Michael E., supra,* 213 Cal.App.4th at p. 677.) The agency and court were well aware of the paternal aunts' requests for custody of R.T., and their pending home studies, at the time of the combined jurisdictional and dispositional hearing. One of the aunts testified at the hearing that she remained interested in adopting the child despite the agency's discouragement. Both parents urged the court to order the agency to assess the aunts for placement. R.T.'s aunts were entitled to preferential consideration and should have been evaluated for placement under the applicable statutory criteria before selecting an NREFM for permanent placement. (§ 361.3, subd. (a)(1)-(8).) Early placement decisions are critical and must be approached with care. They have lasting effects because children bond with their caretakers and caretakers are generally given preference over other applicants when children are freed for adoption. (§ 366.26, subd. (k).)

The agency did not evaluate the relatives for placement, either before or after the combined jurisdictional and dispositional hearing. The agency did complete the preliminary step of a home study of the paternal aunts but, as noted above, did so without any intention of making a full assessment of the appropriateness of a relative placement. When the agency first contacted aunt and uncle concerning the home study, it told them their home could not be assessed until a six-foot fence was constructed around their swimming pool, which was done. On September 20, 2012, the home study was completed and aunt and uncle's home found suitable for placement. R.T. was less than two months old at the time. The agency refused to evaluate aunt and uncle for placement. The agency simply decided, without reference to or consideration of statutory standards, that R.T. was in a good placement and would not move him.

incorrect. The relative preference applies exclusively to adult relatives seeking placement. (§ 361.3, subd. (c)(1) & (2).)

3. *The court erred in denying aunt and uncle's modification motion.*

On November 30, 2012, when R.T. was just four-months old, aunt and uncle filed a motion to modify the child's placement, asserting they had been denied preferential consideration for placement and expressing their desire for custody and adoption. (§ 388.) The court held a series of evidentiary hearings and did not rule on the motion until September 30, 2013, by which time R.T. was 14 months old. The court then denied the motion, finding that the agency's action in placing R.T. with Victoria and her husband "was reasonable and logical at the time [the] decision was made" and, moreover, any error in the initial placement was "irrelevant at this point" because the relative preference required by section 361.3 applies to a placement decision made at the dispositional hearing, which had long since concluded. Having rejected the applicability of section 361.3, the court assessed whether modification of R.T.'s placement was in the child's best interest and found it was not because the child was bonded to Victoria and her husband after spending the entire 14 months of his life in their care. The court found that Victoria or the paternal relatives would "each provide a loving and safe environment for [R.T.] to grow up in" but that preserving the child's bond with Victoria was more important to the child's well-being than the family relationships that placement with the paternal relatives would preserve.

The court erred in failing to apply the correct standards. "Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made . . . ." (§ 388, subd. (a)(1).) Aunt and uncle petitioned the court to modify or set aside its dispositional order placing R.T. with Victoria and presented evidence they requested consideration for placement as R.T.'s relatives in advance of the dispositional hearing but were denied consideration and continued to be denied consideration following successful completion of the home study. As discussed above, the paternal aunts were entitled to preferential consideration and should have been evaluated for placement before selecting a nonrelative for permanent placement at the dispositional

11

hearing. (§ 361.3.) Placement with nonrelatives was not "reasonable and logical at the time [the] decision was made," as the juvenile court held, given a pending request for relative placement.

Nor was the placement error in the dispositional order "irrelevant" when challenged by the November 2012 modification motion. The motion was filed early in the dependency process, before a permanent planning hearing, when R.T. was only four-months old. A relative placement evaluation at that time would have permitted the court to assess the appropriateness of relative placement under the applicable statutory standards. (§ 361.3 subd. (a)(1)-(8).) Instead, the court held piecemeal evidentiary hearings over a period of 10 months on immaterial issues that unnecessarily delayed the proceedings.

The court erred in deeming relative preference under section 361.3 inapplicable to postdisposition proceedings. It is presently unsettled whether a relative is entitled to preference when requested late in the proceedings, when the child is in a stable placement following the dispositional hearing and termination of reunification services. (See *In re Stephanie M., supra,* 7 Cal.4th at pp. 319-320 [noting but not resolving issue].) One case, upon which the agency relies, suggests the relative preference does not apply after the dispositional hearing unless the nonrelative placement fails and a change of placement is required. (*In re Lauren R.* (2007) 148 Cal.App.4th 841, 854-855.) Other cases disagree, (*E.g., In re Joseph T., Jr.* (2008) 163 Cal.App.4th 787, 794-795.) The issue has no bearing here, where the relatives invoked the preference *before* the dispositional hearing, the agency and court failed to apply it at disposition, and the error was timely raised by a section 388 motion. Under these circumstances, the court should have directed the agency to evaluate the relatives for placement under the relevant standards (§ 361.3 subd. (a)(1)-(8)) and, upon receipt of the evaluation and the agency's placement recommendation, exercised its independent judgment to consider if relative placement was appropriate (*In re H.G.* (2006) 146 Cal.App.4th 1, 14-15). If the court found relative placement inappropriate it was required to state its reasons on the record. (§ 361.3, subd. (e).) The

court failed to do any of this, instead applying a generalized best interest test unguided by the relevant statutory criteria.

The grant or denial of a section 388 petition is reviewed for abuse of discretion. (*In re Shirley K.* (2006) 140 Cal.App.4th 65, 71.) "[A] court abuses its discretion when it applies incorrect legal standards," as it did here. (*In re Shannon M.* (2013) 221 Cal.App.4th 282, 289.) Neither the agency nor the court considered if relative placement was appropriate under the applicable statutory standards. (§ 361.3 subd. (a)(1)-(8).) We cannot say this error was harmless because the juvenile court may well have reached a decision more favorable to the relatives had it considered the relative placement preference. (*People v. Watson* (1956) 46 Cal.2d 818, 836; see *Cesar V. v. Superior Court, supra,* 91 Cal.App.4th at p. 1033 [reversing placement order where court failed to make section 361.3 assessment].)

B. *The juvenile court erred in failing to determine if the agency abused its discretion in refusing to accept parental relinquishment of the dependent child for adoption by designated relatives.*

Parents may relinquish a child for adoption by designated individuals. (Fam. Code, § 8700, subds. (a) & (f).) The parents here sought to relinquish their child for adoption by paternal relatives. The agency told the parents it would accept relinquishment if they designated the child's current caretakers as the adoptive parents but would not accept the parents' choice for adoption. The parents filed a motion asking the court to overturn the agency's decision. The court denied the motion, finding it had no jurisdiction in the matter. We do not agree that the exercise of an adoption agency's discretion to refuse a parent's relinquishment of a child to a designated individual as contrary to the child's best interest is immune from judicial review. As with other matters over which an agency exercises discretion, a juvenile court may review for abuse of discretion the agency's refusal of a parent's voluntary relinquishment of a dependent child for adoption. (See, e.g., *Department of Social Services v. Superior Court* (1977) 58 Cal.App.4th 721, 731-734 [agency's placement of child freed for adoption is reviewed for abuse of discretion].)

(1) *Procedures for Agency Adoption*

A parent may voluntarily relinquish a child for adoption and, when doing so, may designate the person with whom the parent intends the child to be placed. (Fam. Code, § 8700, subds. (a) & (f).) Generally, parents considering relinquishment to a public adoption agency contact the agency, which assesses the child for adoption and advises the parents of their rights.[7] (Cal. Code Regs., tit. 22, §§ 35127.1, 35219.) There are several regulatory prerequisites to agency acceptance of a parent's relinquishment. Among them, "the agency shall determine and document in the case record: [¶] (1) That the parent has chosen the plan of adoption for the child and freely chooses to relinquish the child. [¶] (2) That the agency is able to place the child for adoption. [¶] (3) Whether the child is subject to the provisions of the [Indian Child Welfare Act]. [¶] . . . [¶] (4) That the parent has received required services and advisement as appropriate to the category of parents as described [in the regulations]. [¶] (5) That the parent has the ability to understand the content, nature and effect of signing the relinquishment." (*Id.*, § 35135, subd. (a).)

The regulations do not specify how an agency determines if it "is able to place the child for adoption." (Cal. Code Regs., tit. 22, § 35135, subd. (a)(2).) This provision has been understood to mean that an agency will not accept a designated relinquishment until it completes an approved home study of the designated placement and determines the placement to be in the child's best interest. (*In re R.S.* (2009) 179 Cal.App.4th 1137, 1149, fn. 5.) The agency here seems to use this standard, asserting it has discretion to reject a proffered designated relinquishment "based on a child's best interest."

When accepted, an effective relinquishment is accomplished "by a written statement signed before two subscribing witnesses and acknowledged before an authorized official" of the State Department of Social Services (department), county adoption agency or licensed adoption agency. (Fam. Code, § 8700, subd. (a).) The statement is made on a form provided by the department, which contains a section for the name of the agency and the signature of the acknowledging official. (Cal. Code Regs., tit.

---

[7] The Alameda County Social Services Agency is a licensed county adoption agency.

22, § 35143.) "At the time the relinquishment document for adoption is signed, the agency shall: [¶] (A) Request the parent to read and sign the [statement of the adoption process] pursuant to Family Code section 8702. [¶] (B) Advise the parent of the provisions of Family Code Section 8701 [concerning the parent's right to request information on the status of the adoption]. [¶] (C) Accept the relinquishment by signing the acknowledgment portion of the relinquishment document. [¶] (D) Give the parent a copy of the completed relinquishment document." (*Id.*, § 35149, subd. (a)(3).)

The agency accepting the relinquishment must file it with the department within 10 days of the document's signing, unless the parent agrees to a longer holding period. (Cal. Code Regs., tit. 22, §§ 35141, subd. (a)(1), 35165, subd. (b).) With limited exceptions, the relinquishment is final 10 business days after the department's receipt of the filing. (Fam. Code, § 8700, subd. (e)(1).) "After the relinquishment is final, it may be rescinded only by the mutual consent of the . . . agency . . . to which the child was relinquished and the birth parent or parents relinquishing the child." (*Id.*, § 8700, subd. (e)(2).) The agency to which a child has been freed for adoption by relinquishment is responsible for the child's care until an order of adoption is granted. (*Id.*, § 8704, subd. (a).)

Following relinquishment, the prospective adoptive parent submits an application to the agency which conducts an in-depth assessment. (Cal. Code Regs., tit. 22, §§ 35177, 35181.) In assessing the adoptive applicant, the agency considers a number of specified factors, including "the applicant's commitment and capability to meet the needs of a child," "[a]dequacy of housing," and "[f]inancial stability." (*Id.*, § 35181, subds. (c)(2), (5) & (7).) If the assessment meets agency standards, the child is provisionally placed with the prospective adoptive parent and the agency supervises the placement for six months. (*Id.*, §§ 35201, subd. (b), 35203, subd. (c).) The agency's placement decision is subject to court review for abuse of discretion. (*Department of Social Services v. Superior Court, supra,* 58 Cal.App.4th at p. 725.)

Upon placement, the prospective adoptive parent may file a court petition for adoption. (Fam. Code, § 8704, subd. (b).) The agency reports to the court within 180 days

15

after the adoption petition is filed recommending that the petition be either granted or denied. (Cal. Code Regs., tit. 22, § 35211, subds. (b)(1) & (d)(7).) If the agency refuses to consent to adoption by petitioner, "the court may nevertheless order the adoption if it finds that the refusal to consent is not in the child's best interest." (Fam. Code, § 8704, subd. (b).) If placement with a designated prospective adoptive parent is terminated, the agency must notify the birth parents of their right to rescind the relinquishment. (Fam. Code, § 8700, subd. (g); Cal. Code Regs., tit. 22, § 35207, subd. (c).) A parent has 30 days to rescind from the date the notice is mailed. (Fam. Code, § 8700, subd. (h).)

(2) *Adoption of Dependent Children*

Parents of a dependent child under court jurisdiction pursuant to section 300 retain the right to voluntarily relinquish their child for adoption. In fact, relinquishment is encouraged for parents unable to reunite with their child. In 1997, the Legislature enacted a series of measures "to expedite legal permanency for children who cannot return to their parents and to remove barriers to adoption by relatives of children who are already in the dependency system or who are at risk of entering the dependency system." (Fam. Code, § 8714.5, subd. (a).)

A kinship adoption process was established that allows for continuing contact between birth parents and child if contact is found by the court to be in the best interest of the child. (Fam. Code, § 8616.5.) Relevant here, the Legislature clarified that a birth parent may relinquish a dependent child (*id.*, § 8700, subd. (i)) and required social services agencies to advise parents of this option. The social services agency's report for the disposition hearing must state "[w]hether the parent has been advised of his or her option to participate in adoption planning . . . and to voluntarily relinquish the child for adoption if an adoption agency is willing to accept the relinquishment."[8] (Welf. & Inst. Code, § 358.1, subd. (g); Cal. Rules of Court, rule 5.690(a)(1)(B)(iii).) No reunification services need be provided to a parent who voluntarily relinquishes the child for adoption. (Welf. & Inst. Code, § 361.5, subd. (a).)

---

[8] The agency's disposition hearing report does not contain this statement.

16

These measures were enacted to encourage adoption by relatives by offering an alternative to "the adversarial juvenile court process that requires finding the birth parent unfit" and severing family ties. (Sen. Jud. Com., com. on Assem. Bill No. 1544 (1997-1998 Reg. Sess.) Aug. 26, 1997, p. 4.) "By offering relatives an alternative to traditional adoption, this bill attempts to move more children out of the foster care system and into permanent homes." (*Ibid.*) These measures also expedite permanent placement for dependent children by obviating the need for reunification services, a hearing to terminate parental rights, and an appeal from an order terminating parental rights. A child relinquished voluntarily achieves "the stability of a final adoption without the delay attendant upon the exhaustion of the parents' appeal from an involuntary termination of parental rights." (*In re R.S., supra,* 179 Cal.App.4th at p. 1154, fn. omitted.)

An agency accepting a parent's relinquishment of a dependent child for adoption provides written notice of the relinquishment to the court and counsel in the dependency case. (Fam. Code, § 8700, subd. (i).) A court may generally "limit the control to be exercised over the dependent child by any parent" (Welf. & Inst. Code, § 361, subd. (a)), but that provision "does not limit the ability of a parent to voluntarily relinquish his or her child to the State Department of Social Services or to a county adoption agency at any time while the child is a dependent child of the juvenile court, if the department or agency is willing to accept the relinquishment." (*Id*., § 361, subd. (b).)

Section 361 has been held to establish different standards for relinquishment of a dependent child to a private adoption agency versus the department or a county adoption agency. If a parent relinquishes a dependent child to a private adoption agency, "the juvenile court retains its broad power to limit the parent's control over the dependent child, which includes the parent's ability to relinquish the child to a private adoption agency." (*Teresa J. v. Superior Court* (2002) 102 Cal.App.4th 366, 375.) The court may invalidate a designated relinquishment to a private adoption agency if it finds the relinquishment is not in the child's best interest. (*Id.*, at pp. 375-376.) That rule does not apply to public agency adoptions of dependent children. (*Id.* at p. 375.) A court's power to limit parental control over a dependent child "does not limit the ability of a parent to

17

voluntarily relinquish his or her child to the [department] or to a county adoption agency." (§ 361, subd. (b).) This provision evinces "a legislative intent to preserve without limitation the right of a birth parent of a dependent child to relinquish voluntarily his or her parental rights and free the child for adoption through a public adoption agency." (*In re R.S., supra,* 179 Cal.App.4th at p. 1151.) The court is therefore "barred by section 361, subdivision (b), from making any order that interferes with a birth parent's final voluntary designated relinquishment" that has been accepted by a public agency. (*Id.* at p. 1152.)

> 3. *An agency's discretion to refuse parental relinquishment of a dependent child for adoption is subject to judicial review for abuse of discretion.*

The agency here did not accept the parents' relinquishment and contends it may refuse a designated relinquishment based on a child's best interest. We agree that a public agency has such discretion, but it may not be abused. Regulations provide that an agency must determine it "is able to place the child for adoption" before accepting a relinquishment. (Cal. Code Regs., tit. 22, § 35135.) While the regulations do not explicitly so state, the child's best interests undoubtedly should be taken into account in determining whether to accept a designated placement. (*In re R.S., supra,* 179 Cal.App.4th at p. 1149, fn. 5.) The parents do not contend otherwise. Mother asserts only that the agency should not have "summarily" refused relinquishment when presented with a relinquishment form, without further assessment.

The record here fails to show the agency made a reasoned assessment of the child's best interest. Agency counsel told the juvenile court the agency rejected the designated relinquishment because honoring the parents' choice of adoptive parents would entail moving the child "to a place he never lived before." The potential disruption of a current placement is of course a relevant consideration. "[A] primary consideration in determining the child's best interest is the goal of assuring stability and continuity." (*In re Stephanie M., supra,* 7 Cal.4th at p. 317.) However, the fact that a child has been temporarily placed in a foster care home, including a home into which the child might ultimately be adopted, is not dispositive. In addition to considering the age of the child

and the length of the temporary placement, there are other significant factors to be considered.

An evaluation of the best interest of a child offered for adoption requires a balanced evaluation of the benefits and detriments of the proposed adoption. A guideline for making such an evaluation is found in a regulation used to assess an applicant for adoption. (Cal. Code Regs., tit. 22, § 35181.) In assessing adoptive applicants, the agency weighs a variety of factors that include the applicant's personal characteristics, financial stability, and "commitment and capability to meet the needs" of the child. (*Id.* § 35181, subd. (c).) The agency here did not assess the proposed adoptive parents and weigh the benefits and detriments of adoption, as it was required to do.

The agency argued below that the juvenile court has no power of review and contends on appeal that the agency "has discretion to reject voluntary relinquishments without court intervention" in the dependency proceeding. The agency asserts that the decision to accept or reject a parent's designated voluntary relinquishment of a child for adoption is an executive function, subject to administrative review. The agency relies upon a regulation that provides: "Upon written request from an applicant or a prospective adoptive parent, the agency shall provide for a grievance review hearing on any action taken by the agency before a petition for adoption is filed." (Cal. Code Regs., tit. 22, § 35215, subd. (a).) The agency asserts that any redress for an agency's refusal to accept a designated relinquishment is limited to the regulatory grievance process followed by a petition for writ of administrative mandate. (Code Civ. Proc., § 1094.5; *In re B.C.* (2011) 192 Cal.App.4th 129, 147-148, fn. 21.)

The regulatory grievance process, however, is available only to *an applicant or a prospective adoptive parent* seeking placement of a child freed for adoption. It is questionable whether individuals designated by birth parents in a rejected relinquishment petition are considered prospective adoptive parents for this purpose, and the birth parents themselves clearly are not mentioned in the regulation. In any event, characterization of the agency's action as an executive function and the possible availability of administrative review does not foreclose judicial review within the context

19

of a dependency proceeding. "The ultimate responsibility for the well-being of a dependent child rests with the juvenile court. [Citations.]" (*In re Shirley K., supra,* 140 Cal.App.4th at p. 73.) A juvenile court is charged with "the protection and safety" of children within its jurisdiction (§ 202, subd. (a)) and "may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support" of a child adjudged a dependent child of the court (§ 362, subd. (a)). The court has a critical "oversight role" to assure that social services agencies making placement decisions properly evaluate a dependent child's best interest. (*In re Shirley K.*, at p. 73.)

A social services agency's possession of broad discretion in making certain decisions does not render it immune from juvenile court review. An agency has "exclusive custody and control" of a dependent child freed for adoption (Fam. Code, § 8704, subd. (a)), but its placement decisions are reviewed for abuse of discretion (*Department of Social Services v. Superior Court, supra,* 58 Cal.App.4th at pp. 731-734). As in the case of an agency's extensive authority to evaluate whether a criminal conviction of a relative of a dependent child precludes placement with the relative, the agency's decision remains subject to judicial review for abuse of discretion. (*In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1060.)

*In re Esperanza C., supra,* noted that "[t]he agency's decision not to grant an exemption for a criminal conviction is an executive one, subject to administrative review. [Citation] . . . [But t]his does not necessarily mean the criminal records exemption process is immune from judicial review within the context of the child's dependency proceedings. [Citations.]" (165 Cal.App.4th at p. 1059.) "The administrative grievance process is designed to protect the rights and interests of the applicant. [Citations.] It does not necessarily safeguard the interests of the court, the child, the parent and the social worker in the child's *prompt* placement in the home of an appropriate relative. [Citations.] If the juvenile court lacks jurisdiction to review the agency's criminal records exemption process, the child and the parent are left without any timely, and therefore effective, means to challenge the agency's decision." (*Id.* at pp. 1059-1060.)

20

Given the important interests involved, the juvenile court may similarly review for abuse of discretion an agency's rejection of a parent's voluntary relinquishment of a dependent child for adoption. In such matters, the juvenile court is to assess whether the agency " 'acted arbitrarily and capriciously, considering the minor's best interests.' [Citations.]" (*In re Esperanza C., supra,* 165 Cal.App.4th at p. 1059 [applying abuse of discretion standard].) An abuse of discretion is also established if the agency applies an incorrect legal standard to the facts (*id.* at p. 1061) or if the agency's decision is " 'patently absurd or unquestionably not in the minor's best interest' " (*In re R.C.* (2008) 169 Cal.App.4th 486, 495).

Mother argues the juvenile court should exercise its independent judgment to determine whether accepting a designated relinquishment is in the child's best interest. We disagree. A juvenile court exercises its independent judgment when it is responsible for making certain decisions, as in the placement of a dependent child before the termination of parental rights and referral for adoption. (*Cesar V. v. Superior Court, supra,* 91 Cal.App.4th at pp. 1033-1034.) But the juvenile court is limited to determining whether a social services agency abused its discretion when the agency is vested by law with "the sole authority to make a particular determination." (*In re M.C.* (2011) 199 Cal.App.4th 784, 814, fn. 21.) Whether to accept a relinquishment of a child for adoption is a determination vested in the adoption agency. Relinquishment is made to an adoption agency (Fam. Code, § 8700) following its assessment of the child and confirmation that the parent is making a willing and knowing decision (Cal. Code Regs., tit. 22, §§ 35127.1, 35135). Statutes governing dependency proceedings condition relinquishment on an agency "willing to accept the relinquishment." (§§ 358.1, 361, subd. (b).) An adoption agency has discretion to accept or refuse a relinquishment and thus the proper question on review is whether the agency abused its discretion.

C. *Appropriate Relief*

Because the juvenile court erred in failing to apply the statutory preference for relative placement, and in failing to determine if the agency abused its discretion in rejecting the parents' relinquishment of the child for adoption by their designated

21

relatives, none of the orders on appeal may stand and remand is necessary. Since the agency itself failed to consider the proper standards, the agency should be directed to submit new reports and recommendations which update the relevant facts and apply the correct standards. Initially, the agency shall redetermine whether to accept the parents' offer to relinquish their son for adoption by his parental relatives, considering the best interests of the child. Should the agency again decline to do so, it must then proceed to make an explicit determination whether relative placement is appropriate under applicable statutory standards (§ 361.3, subds. (a)(1)-(8)) and submit a reconsidered recommendation for a permanent plan for the child under section 366.26. The court must then review the agency's decisions and act upon its recommendations pursuant to the standards we have discussed.

We recognize that what is in the child's best interests at this point, almost two and one-half years after his birth, may well differ from what would have been his best interests when he was still an infant. The passage of time may have strengthened R.T.'s bonds with his caretakers and other circumstances may have developed that bear on an evaluation of his best interest. Meaningful redress for past mistakes may not be possible, but we cannot unwind the clock. The interests of stability and continuity may or may not prevail over familial bonds. This difficult question must be decided in the first instance by the juvenile court under the governing legal standards, which must be applied to the circumstances as they exist at the time of the hearing on remand.

## III. Disposition

The order terminating parental rights is reversed and the matter is remanded for further proceedings as specified above.

_____

Pollak, J.

We concur:

_____

McGuiness, P. J.

_____

Jenkins, J.

A140144
A140781

Alameda County Superior Court, No. SJ12019365, Willie Lott, Jr., Judge

Valerie E. Sopher, under appointment by the Court of Appeal, for Defendant and Appellant Paula T.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant David D.

Gorman Law Office and Seth F. Gorman, for Appellants R.K. & D.K.

Donna R. Ziegler, County Counsel, and Victoria Wu, Assistant County Counsel, for Petitioner and Respondent Alameda County Social Services Agency