Filed 4/15/16  In re A.V. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.V., a Person Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>L.V.,<br><br>Defendant and Appellant. | F071708, F072609<br><br>(Super. Ct. No. 13CEJ300347-3)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Fresno County.  Mary D. Dolas, Commissioner.  ORIGINAL PROCEEDINGS; petition for writ of habeas corpus.

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Brent C. Woodward, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

L.V. (mother)[1] appeals from the termination of parental rights to her son, A.V. (the minor) under Welfare and Institutions Code section 366.26.[2]  On appeal and in her related petition for writ of habeas corpus, mother contends her trial counsel rendered ineffective assistance by failing to adequately research the law, which resulted in his failure to draft, on her behalf, a valid written statement relinquishing her parental rights and designating the minor's godfather as the prospective adoptive parent of the minor and his two half-siblings in compliance with the requirements of Family Code section 8700.[3]  Having consolidated the two cases on our own motion for purposes of hearing and opinion, we affirm the termination order and deny the petition for habeas corpus.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2014, the minor was detained as a newborn infant due to mother's history of substance abuse.  Although the minor did not test positive for drugs at the time of his birth, mother did not receive prenatal care and tested positive for methamphetamine in February 2014.

In July 2014, the juvenile court assumed jurisdiction over the minor under section 300, subdivisions (b) and (j), based on mother's drug use and neglect of two of the minor's half-siblings, who were removed from mother's care in November 2013, and were the subject of separate dependency proceedings.  In the minor's case, mother was

---

[1]    In this opinion, certain persons are identified by initials, abbreviated names and/or by status in accordance with our Supreme Court's policy regarding protective nondisclosure.  No disrespect is intended.

[2]    Further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[3]    We do not analyze mother's contention as it relates to the minor's two half-siblings because her paternal rights to those children had already been terminated in separate dependency proceedings prior to counsel's allegedly deficient attempt to effect a relinquishment of mother's parental rights to all three children.  Thus, the arguments of the attorneys and the juvenile court's ruling at the subject section 366.26 hearing addressed the department's rejection of the attempted relinquishment of mother's parental rights only as to the minor.

2.

bypassed for reunification services and a section 366.26 hearing was set for October 2014.

In April 2014, the minor was placed in the same foster home with his two half-siblings and in which the three children continued to live at the time of the section 366.26 hearing in the minor's case. The hearing did not commence until June 2015, after the Fresno County Department of Social Services (department) sought a couple of continuances for the purpose of trying to locate a prospective adoptive home willing to take placement of all three children.

In its original section 366.26 report filed in October 2014, the department detailed the absence of a parent/child relationship between mother and the children and her failure to engage the children during supervised visits. The children's godfather, N.M., told the department that he was the one who was encouraging mother to attend supervised visits and had been providing her with transportation to the visits.

In an addendum report filed in February 2015, the department reported that N.M. sought placement of all three children and submitted a home approval application on January 23, 2015. The department noted it was in the process of inspecting N.M.'s home and that it would assess him for placement of the children.

At a section 366.26 hearing in April 2015, the juvenile court terminated mother's parental rights to the minor's two half-siblings. Finding it was unlikely the minor's half-siblings would be adopted, the court found the appropriate permanent plan was for them to remain in foster care with the permanent goal of a less restrictive placement.

On May 1, 2015, mother's counsel sent an e-mail to both the department's counsel and the social worker assigned to the minor's case, stating that mother wished to designate N.M. as a prospective adoptive parent of the minor and his two half-siblings pursuant to Family Code section 8700. The e-mail also provided a contact telephone number for N.M.

On May 7, 2015, mother's counsel filed a witness list and first amended statement of issues, identifying the following as one of the contested issues for the upcoming section 366.26 hearing in the minor's case:

> "Whether CPS [(i.e., Child Protective Services)] abused its discretion in not accepting [mother's] attempt to relinquish [the minor] to CPS for adoption by … [N.M.]. 'Parents of a dependent child under court jurisdiction pursuant to section 300 retain the right to voluntarily relinquish their children for adoption. In fact, relinquishment is encouraged for parents unable to reunite with their child.' (*In re R.T.* (2015) 232 Cal.App.4th 1284, 1303 [(*R.T.*)].) 'The relinquishing parent may name in the relinquishment the person or persons with whom he or she intends that placement of the child for adoption be made…' (Fam. Code, § 8700, subd. (f).) If CPS refused to accept a parent's attempted relinquishment, the trial court reviews CPS's determination for abuse of discretion. (…*R.T.*, *supra*, at p. 1301.)"

In an addendum report filed in June 2015, the department recommended terminating mother's parental rights to the minor and finding adoption to be the most appropriate permanent plan. The department further recommended finding a permanent placement living arrangement to be the most appropriate plan for his two half-siblings.

According to the addendum report, there were currently no adoptive homes both willing and able to provide a permanent plan for all three children. Regarding its recommendation of a permanent plan of adoption for the minor, the department noted that the paternal grandparents had expressed a willingness to adopt the minor and that on April 8, 2015, an application had been submitted for them to be assessed for possible placement. The department further reported there were other paternal relatives it was also planning to explore for possible placement of the minor.

Concerning the recommendation of a permanent planned living arrangement for the minor's half-siblings, the department noted that N.M. had expressed an interest in taking placement and was currently being assessed by the home approval unit for possible placement. The children's foster parents reported that N.M. cared about the children. However, due to his age, N.M. was "unable to actively play or run around with

4.

the children as much." Most of the time, N.M. would just sit while observing or talking to the children.

The section 366.26 hearing finally commenced on June 4, 2015. After the department submitted on the reports, mother's counsel called the social worker to testify. The social worker confirmed she received counsel's e-mail on May 1, 2015, stating that mother wished to designate N.M. as a prospective adoptive parent and providing N.M.'s contact phone number.

The social worker confirmed she did not contact N.M. or assess him as a prospective adoptive parent. According to the social worker's testimony, although N.M.'s home assessment was still underway, the department was not planning to have him adopt the minor. When asked why N.M.'s home had not yet been approved, the social worker testified there were "some criminal issues that may need an exception" and that the "criminal exemption issues" related to N.M. himself and not someone else living in the home.

The social worker further testified that in her conversations with mother, mother never specifically said she wanted to relinquish her parental rights and have N.M. become the adoptive parent for the three children. Instead, about two weeks prior to the section 366.26 hearing, mother asked the social worker about the home approval process and when the minor would be placed with N.M.

The social worker initially testified that, as far as she knew, no one from the department had ever advised mother she could relinquish the minor or had the right to designate a potential adoptive parent. Later in the hearing, however, the social worker concluded her earlier testimony was mistaken based on her review of the June 24, 2014, disposition report, which was written by a different social worker and reflected that mother had been advised of her right of relinquishment. This was a common practice for the department prior to disposition. None of the previous social workers reported that

mother had ever sought to relinquish her parental rights and have N.M. designated as a prospective adoptive parent.

N.M. testified he was the minor's godfather and wanted to adopt the minor. He denied having ever been convicted of a criminal offense. When asked how he knew mother, N.M. testified that she used to take his clothes over to be sewn by her mother. Regarding how he became the minor's godfather, N.M. testified, "Well, because when I started going over there, [mother] had the child and she asked me if I want to be the [g]odfather of her kids. I said yes." N.M. testified he asked for placement of the minor two to three months earlier because he saw no one else had asked for the minor.

Mother testified she was willing to have the minor adopted by N.M. and to designate him as the prospective adoptive parent, but the department never asked her to sign anything indicating she was willing to do this. When asked when she decided she wanted to relinquish her parental rights, mother testified "since they told me that I was going to lose my parental rights." Mother estimated this was approximately two months before the section 366.26 hearing in the minor's case. Mother further testified that N.M. was a close friend to her family and that she had met him through her late mother who had been a seamstress.

Mother testified that N.M. used to help her out with grocery shopping and buying school clothes for her children. He would also help by picking up her and the children when she had trouble with transportation. When asked why she wanted N.M. to be the prospective adoptive parent of the minor, mother testified: "Because he's the only person that I have that could help me out especially with my kids. Well, because as you see, my mom passed away. My mom used to be—I don't have no … other type of support that can help me out."

After listening to the arguments of counsel, the juvenile court ruled as follows:

> "At this point, we are here today for a [section 366.26] report and recommendation as it pertains to the minor…. The Department is

recommending at this time that the Court find adoption be the most appropriate permanent plan. There is contest today and raised the issue as to whether the Department abused its discretion in not accepting mother's attempt to relinquish [the minor] for adoption and identify the [g]odfather [N.M.] as a potential person to adopt the minor.

"In reviewing the case cited, [*R.T.*, *supra*, 232 Cal.App.4th 1284], the Court has also reviewed the statute, primarily … Section 361, I believe it's subsection B, first identifies—which is essentially a disposition issue— one of the possible considerations at disposition as to consider a relinquishment of the child filed by the parent. And, again, if there's no relinquishment, there's a consideration as to whether the minor could be removed from the parent and other dispositional options. But I think that's why at disposition and the disposition report in this case did reflect mother was advised of the right to relinquish and apparently at that time, which is consistent with testimony, she chose not at that time to relinquish— voluntarily relinquish her parental rights.

"In reviewing the Family Code statute—and again consistent with [*R.T.*, *supra*, 232 Cal.App.4th 1284], Family Code Section 8700 clearly sets out the requirements in regards to a parent's desire to voluntar[ily] relinquish their parental rights ant it clearly states—and that's consistent with the case—that either birth parent—or a birth parent may relinquish for adoption a child to either the Department of Social Services, a county adoption agency or a licensed adoption agency. Relinquishment must be made by the parent in a written statement signed before two witnesses and then acknowledged before an authorized official of the Department or agency. The Department does or—the adoption agency or the Department does have the option to accept or deny the relinquishment statement but it does require it be on a statement I think for obvious reasons. The Department can't just assume that from a parent based on a conversation or anything else. It's clear in the statute. It's clear also in … [*R.T.*, *supra*, 232 Cal.App.4th 1284] where, in that particular case, the parents did execute a relinquishment statement that subsequently in that case was denied by the Department and then it was an issue on appeal as to whether—for the court to determine whether the Department exercised—whether that was done appropriately.

"But in this case, I think it's clear that there was discussion. Apparently mother's counsel did notify the Department that mother was interested in relinquishing and identifying somebody. The Department indicated she did speak to mother she, not in those exact words, discussed the possibility of wanting to maybe relinquish and identify somebody but I

don't think that meets the criteria in that it's not a signed statement and witnessed by at least two others indicating mother or the parent's desire to want to do this.

"So there's no written statement as to whether the Department abused its discretion in not accepting, I don't think that can before the Court since we don't have a valid relinquished statement signed by the parent and by two witnesses. So, therefore, the Court, without any further evidence to consider, having read and considered the various reports as to [the minor], I do find that there's clear and convincing evidence that it's likely [the minor] will be adopted given his age, he's emotionally, physically, and psychologically healthy, clearly has the ability to form relationships and so, therefore, will find given all that and the fact that there's been no other evidence pertaining to any exception to adoption, the Court will find that adoption is the appropriate permanent plan for [the minor]."

## *DISCUSSION*

Mother contends she received ineffective assistance due to her counsel's failure to adequately research the law, which she claims resulted in his failure to prepare an effective written statement relinquishing her parental rights and designating N.M. as the prospective adoptive parent of the minor in compliance with the requirements of Family Code section 8700. We disagree.

Section 317.5, subdivision (a), provides "[a]ll parties who are represented by counsel at dependency proceedings shall be entitled to competent counsel." In order to establish that her counsel was ineffective, mother must demonstrate *both* that: (1) her appointed counsel failed to act in a manner expected of reasonably competent attorneys acting as diligent advocates; and that (2) this failure made a determinative difference in the outcome, rendering the proceedings fundamentally unfair in that it is reasonably probable that but for such failure, a determination more favorable to her interests would have resulted. (*In re Dennis H.* (2001) 88 Cal.App.4th 94, 98 (*Dennis H.*).) Mother has not met her burden on either element in this case.

Mother contends the first element was met by her counsel's failure to research the law, asserting there can be "no satisfactory explanation for trial counsel's failure to

8.

prepare a valid relinquishment, other than his lack of research and understanding of the requirements of Family Code Section 8700, subdivision (a)."[4] The record not only fails to support mother's assertion but provides support for the opposite conclusion, namely, that counsel *did* research the law and was aware of the legal requirements for preparing a valid relinquishment. Notably, in the proceedings below, counsel relied on the same legal authorities concerning those requirements which mother now relies on to support her claim that counsel rendered ineffective assistance. Counsel's statement of contested issues for the section 366.26 hearing specifically cited both Family Code section 8700 and *R.T.*, *supra*, 232 Cal.App.4th 1284, authorities the juvenile court also referenced in explaining its ruling.

The court of appeal in *R.T.*, *supra*, 232 Cal.App.4th 1284, provided a detailed description of the applicable procedures for effectuating a valid relinquishment of parental rights in the dependency context, including the following:

> "A parent may voluntarily relinquish a child for adoption and, when doing so, may designate the person with whom the parent intends the child to be placed. (Fam. Code, § 8700, subds. (a) & (f).) *Generally, parents considering relinquishment to a public adoption agency contact the agency, which assesses the child for adoption and advises the parents of their rights.* [Citations.] There are several regulatory prerequisites to agency acceptance of a parent's relinquishment. Among them, 'the agency shall determine and document in the case record: [¶] (1) That the parent has chosen the plan of adoption for the child and freely chooses to relinquish the child. [¶] (2) That the agency is able to place the child for adoption. [¶] (3) Whether the child is subject to the provisions of the [Indian Child Welfare Act of 1978]. [¶] … [¶] (4) That the parent has received required services and advisement as appropriate to the category of parents as described [in the regulations]. [¶] (5) That the parent has the ability to

---

**4**    Family Code section 8700 provides, in pertinent part: "(a) Either birth parent may relinquish a child to the department … for adoption by a written statement signed before two subscribing witnesses and acknowledged before an authorized official of the department …. [¶] … [¶] (f) The relinquishing parent may name in the relinquishment the person or persons with whom he or she intends that placement of the child for adoption be made by the department …."

9.

understand the content, nature and effect of signing the relinquishment.' [Citation.]

"The regulations do not specify how an agency determines if it 'is able to place the child for adoption.' [Citation.] *This provision has been understood to mean that an agency will not accept a designated relinquishment until it completes an approved home study of the designated placement and determines the placement to be in the child's best interest.* [Citation.]…

"*When accepted, an effective relinquishment is accomplished 'by a written statement signed before two subscribing witnesses and acknowledged before an authorized official' of the State Department of Social Services (department), county adoption agency or licensed adoption agency.* [Citation.] *The statement is made on a form provided by the department, which contains a section for the name of the agency and the signature of the acknowledging official.* [Citation.] 'At the time the relinquishment document for adoption is signed, the agency shall: [¶] (A) Request the parent to read and sign the [statement of the adoption process] pursuant to Family Code section 8702. [¶] (B) Advise the parent of the provisions of Family Code Section 8701 [(concerning the parent's right to request information on the status of the adoption)]. [¶] (C) Accept the relinquishment by signing the acknowledgment portion of the relinquishment document. [¶] (D) Give the parent a copy of the completed relinquishment document.' [Citation.]

"The agency accepting the relinquishment must file it with the department within 10 days of the document's signing, unless the parent agrees to a longer holding period. [Citations.] With limited exceptions, the relinquishment is final 10 business days after the department's receipt of the filing. (Fam. Code, § 8700, subd. (e)(1).) 'After the relinquishment is final, it may be rescinded only by the mutual consent of the … agency … to which the child was relinquished and the birth parent or parents relinquishing the child.' (*Id.*, § 8700, subd. (e)(2).) The agency to which a child has been freed for adoption by relinquishment is responsible for the child's care until an order of adoption is granted. (*Id.*, § 8704, subd. (a).) [¶] … [¶]

"*The agency [has discretion to] refuse a designated relinquishment based on a child's best interest.*… Regulations provide that an agency must determine it 'is able to place the child for adoption' before accepting a relinquishment. [Citation.] While the regulations do not explicitly so state, the child's best interests undoubtedly should be taken into account in

10.

determining whether to accept a designated placement. [Citation.].… [¶] … [¶]

"An evaluation of the best interest of a child offered for adoption requires a balanced evaluation of the benefits and detriments of the proposed adoption. A guideline for making such an evaluation is found in a regulation used to assess an applicant for adoption. [Citation.] In assessing adoptive applicants, the agency weighs a variety of factors that include the applicant's personal characteristics, financial stability, and 'commitment and capability to meet the needs' of the child. [Citation.].… [¶] … [¶]

"*Given the important interests involved, the juvenile court may … review for abuse of discretion an agency's rejection of a parent's voluntary relinquishment of a dependent child for adoption. In such matters, the juvenile court is to assess whether the agency* '"*acted arbitrarily and capriciously, considering the minor's best interests.*" [Citations.]' [Citation.] An abuse of discretion is also established if the agency applies an incorrect legal standard to the facts [citation] or if the agency's decision is '"patently absurd or unquestionably not in the minor's best interest."'" (*R.T.*, *supra*, 232 Cal.App.4th at pp. 1301–1303, 1305–1307, fn. omitted, italics added.)

The multiple references to and direct quotations from Family Code section 8700 and *R.T.*, *supra*, 232 Cal.App.4th 1284, made by mother's counsel in the proceedings below tend to contradict mother's claim that counsel failed to research or understand the applicable law. Nor is such failure demonstrated by counsel's declaration, which mother has submitted in support of her petition for habeas corpus.

In his declaration, counsel claims the e-mail he sent to the social worker and the department's counsel on May 1, 2015, was "intended to effect a relinquishment of [mother's] children but it was not a written statement by [mother] signed by two subscribing witnesses and acknowledged by an authorized official of the Department." However, counsel does not explain why he did not prepare such written statement but simply states "I had no strategic reason for not having attempted to do so." Thus, counsel's declaration does not establish a link between his failure to prepare a written statement of relinquishment and his alleged failure to research or understand the law.

11.

Counsel's claim that he intended his May 1, 2015 e-mail to *effect* a relinquishment of mother's children strains credibility in light of counsel's multiple citations in the juvenile court to pertinent legal authorities, which, as already discussed, detailed the requirements for a valid relinquishment of parental rights. On its face, counsel's e-mail appears to have been intended merely to *notify* the department of mother's *wishes* to designate N.M. as the prospective adoptive parent. There was nothing unreasonable about counsel contacting the department by e-mail to communicate mother's wishes in this regard. Because the department had not yet completed its assessment of N.M.'s home at the time of counsel's e-mail, the department would not have been able to accept, and thus it would have been fruitless for counsel to have presented the department with, a formal written relinquishment of mother's parental rights. (See *R.T.*, *supra*, 232 Cal.App.4th at p. 1302.)

However, even assuming mother sufficiently demonstrated her counsel failed to act in a manner expected of reasonably competent counsel, she has not demonstrated any prejudice resulted. As just discussed, the department could not have accepted a written relinquishment designating N.M. as the prospective adoptive parent of the minor until after it completed its assessment of N.M.'s home. It would have made no difference, therefore, if instead of e-mailing the department, mother's counsel had instead prepared a written statement in accordance with the requirements of Family Code section 7800.

But even accepting, for argument's sake, mother's assertion that, but for counsel's failure to prepare a valid written statement, the juvenile court would probably have granted counsel's request for a continuance of the section 366.26 hearing for the department to complete its assessment of N.M., mother has still not shown counsel's failure made a *determinative* difference. (*Dennis H.*, supra, 88 Cal.App.4th at p. 98.) It is clear from the social worker's testimony at the section 366.26 hearing that the department was disinclined to place the minor with N.M. regardless of the outcome of the assessment and mother has not shown the department's anticipated rejection of N.M. as a

prospective adoptive parent of the minor would likely have been deemed an abuse of the department's discretion and reversed by the juvenile court.

Mother's prejudice argument seems to assume that placement with N.M. was in the minor's best interests because N.M. was willing to adopt the minor's two half-siblings. But we see no basis in the record to conclude that such willingness would likely have been the deciding factor in finding placement with N.M. to be in the minor's best interests, particularly in light of evidence the minor had paternal relatives who were willing and had recently applied to adopt him. Other evidence in the record casting doubt on mother's assumption that placement with N.M. was in the minor's best interests included evidence that N.M. suffered from age-related physical limitations affecting his ability to engage actively with young children and that the department had concerns about his criminal background requiring further investigation.

Because mother has failed to demonstrate she was prejudiced by counsel's failure to prepare a valid written statement relinquishing her parental rights and designating N.M. as the minor's prospective adoptive parent, mother's ineffective assistance of counsel claim necessarily fails.

### *DISPOSITION*

The order terminating parental rights is affirmed. The petition for writ of habeas corpus is denied.

_____
HILL, P.J.

WE CONCUR:

_____
LEVY, J.

_____
PEÑA, J.