Filed 11/8/21  Alex R. v. Superior Court CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ALEX R.,<br><br>     Petitioner,<br><br>          v.<br><br>THE SUPERIOR COURT OF FRESNO COUNTY,<br><br>     Respondent;<br><br>FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>     Real Party in Interest. | F083250<br><br>(Super. Ct. No. 19CEJ300095-1)<br><br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Kimberly J. Nystrom-Geist, Judge.

Alex R., in pro. per., for Petitioner.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and Lisa R. Flores, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]     Before Poochigian, Acting P. J., Meehan, J. and Snauffer, J.

Alex R. (father), in propria persona, seeks an extraordinary writ from the juvenile court's orders issued at a contested jurisdiction/disposition hearing on a supplemental petition (Welf. & Inst. Code, § 387)[1] denying him reunification services and setting a section 366.26 hearing as to his now 12-year-old daughter, R.R., 10-year-old son, Xavier R., seven-year-old son, Jaxon R., six-year-old daughter, X.G.R., and five-year-old daughter, X.K.R., for December 1, 2021. Father contends the juvenile court erred in not placing the children with him or relatives. We deny the petition.

### PROCEDURAL AND FACTUAL SUMMARY

On March 16, 2019, the Fresno County Department of Social Services (department) received a referral that then 10-year-old R.R. had a visible mark or scratch on her neck inflicted by her mother's significant other, Kevin M. The family had 11 prior child welfare referrals, the latest one dated the day before for neglect and emotional abuse. Several days before the March 16 referral, law enforcement was called to mother's home. She would not open the door and talked to the officers through the fence. She asked them to arrest Kevin, claiming he assaulted her children, ripped her purse off her arm, took her keys, robbed her, and pushed her while she was holding her daughter. One of the officers noted that mother was acting " 'very odd and strange.' "

On March 18, 2019, a social worker met with R.R. at her school. She had a small red circle, faint in color, on her cheekbone but not any visible marks on her neck as had been reported. She denied that any adult caused her to have marks or bruises on her body. She last had contact with father in January. Mother did not allow her to visit him. She said Kevin was " 'nice' " and she liked him. She denied Kevin was mean to her or yelled at or hit her. She denied anyone at her house used drugs or alcohol.

R.R. only saw Kevin treat mother mean once. It occurred two days prior to the interview and no one was hurt. Kevin yelled at mother while then two-year-old X.K.R.

---

[1] Statutory references are to the Welfare and Institutions Code.

(the two year old) was in her arms. Kevin did not want mother to take the two year old to the hospital. Mother was walking backwards and tripped and fell. The two year old was not hurt from the fall or from hitting the wall when Kevin pushed her. Kevin grabbed the lanyard of car keys from mother's neck and left. R.R. and the other children witnessed the incident and were afraid.

On the same date, the social worker also met with Xavier at school. Xavier witnessed Kevin push mother into the wall, causing her to fall. While she was on the ground, Kevin took her keys and punched her and the two year old in the arm before leaving. The two year old had a red mark on her arm. The next day, Kevin broke into their house while they were asleep and stole all of mother's money. Kevin tried to break into their house a second time a few days prior to the interview and mother showed the police the marks on his siblings, but Kevin was not arrested. The two year old had a scratch on her mouth that Kevin caused while picking her up, and a red mark on her neck caused by Kevin's daughter using a wrapper to choke her. Jaxon had a mark on his back, also attributed to Kevin.

Mother had full custody of the children as there was a restraining order against father protecting her and the children. The restraining order expired on March 5, 2019. She and Kevin were only friends, but she understood that her children were affected by her relationship with him. She denied Kevin hit her or the two year old.

The department took the children into protective custody and filed a dependency petition, alleging mother exposed them to an unsafe environment by engaging in domestic violence with Kevin. The department placed the children together in foster care.

The juvenile court ordered the children detained and offered the parents parenting classes, substance abuse, mental health and domestic violence assessments, and recommended treatment and random drug testing pending its disposition of the case. The court set a jurisdiction/disposition hearing for May 1, 2019. In its report for the hearing,

the department advised the court the maternal grandmother and a mentor were interested in placement and were provided the information to apply.

On April 5, 2019, the restraining order against father was dissolved, and the family law case was dismissed.

In its report for the jurisdiction/disposition hearing, the department reported that father had an open dependency case regarding a minor from another relationship and was only recently compliant with services and visitation in that case. In the children's case, he completed a mental health assessment and did not require treatment. He was participating in random drug testing. He completed a substance abuse assessment and, although he reported a long history of drug and alcohol abuse, he also reported abstaining since 2018 and was not recommended for treatment. He was on a waiting list for a parenting class and completed a domestic violence assessment, but the results were not yet available to the department. Father appeared to have a relationship with the children. He was employed full time and lived with his parents in their home, which was well above minimal standards. His sister, Cassandra, and her children also lived in the home. If recommended for placement, Cassandra and the paternal grandmother would care for the children while father worked.

The department recommended the court place the children with father under family maintenance and provide mother enhancement services, consisting of the services previously ordered.

On May 1, 2019, the juvenile court sustained the allegations, adopted the department's recommended dispositional orders, set a family maintenance review hearing for August 14 and a six-month review hearing for October 30.

On June 10, 2019, the department filed a modification petition under section 388 (388 petition), advising the juvenile court that father was refusing to drug test and asking the court to order him to submit to hair follicle analysis. Father objected to participating

in services, asserting he was not to blame for the children's removal. Neither father nor his parents were willing to follow the court's orders.

The juvenile court granted the department's section 388 petition and ordered father to submit to a hair follicle analysis.

On June 19, 2019, the department removed the children from father's custody and filed a supplemental petition under section 387, alleging family maintenance services were not effective in protecting them because father refused to drug test. The children were placed in foster care.

The juvenile court ordered the children detained pursuant to the supplemental petition and offered the parents the same services previously ordered. The department noted in its report for the hearing that there were no relatives to consider but it would continue to inquire if there were any relatives or mentors to be considered for placement. Mother stated there were no relatives or friends that could take custody of the children. The maternal grandmother previously inquired but required a written exemption, which required her to complete the Resource Family Approval process.

On October 15, 2019, the juvenile court sustained the supplemental petition, terminated family maintenance services for father and set a six-month review hearing for April 1, 2020.

The six-month review hearing was continued and conducted on June 10, 2020. The juvenile court continued reunification services and set a combined 12- and 18-month review hearing for September 2, 2020. The court found both parents made moderate to significant progress in meeting the objectives of their services plans.

By September 2020, father had completed a parenting class and a domestic violence program. He enrolled in drug testing on June 19, 2020, and tested negative on that day. He subsequently failed to test five times in June and was dropped from the drug testing program. He was given a referral to reenroll but had not done so. The department was concerned he may still be using drugs.

5.

The department opined it would be detrimental to return the children to father's custody because of his history of drug and alcohol use and noncompliance with drug testing. Further, although father regularly visited the children, he had not advanced beyond supervised visits and was dropped from the visitation schedule for missing three consecutive visits.

Mother, on the other hand, had made significant progress and the children had been in her care on a liberal visit since July 17. The department wanted to continue monitoring mother but believed the children could be safely placed in her custody. The department recommended the juvenile court place the children with mother under family maintenance services and terminate father's family reunification services.

The juvenile court adopted the department's recommendations at the review hearing on September 2, 2020, and set a family maintenance review hearing for February 17, 2021. The court granted the department discretion to spot test father for drugs prior to visits.

On November 4, 2020, the juvenile court terminated father's enhancement services. He had been dropped from visits because of absences and from drug testing for multiple no-shows.

On February 17, 2021, the juvenile court continued family maintenance services for mother and set the next review hearing for August 18, 2021. However, in March 2021, the department removed the children from her custody and filed a supplemental petition after the children reported that she drank alcohol while caring for them and fought with her boyfriend "Rob," who hit her. In addition, the home was found to be unsanitary and unsafe. Mother was arrested and the children were placed in two foster homes.

Mother asked the responding social worker to place the children with their maternal grandmother but was told it was not appropriate at that time because the maternal grandmother told mother not to cooperate with law enforcement the night

6.

before. Mother asked if the paternal grandmother could be considered and gave the social worker the paternal grandmother's telephone number. The social worker agreed to contact her.

On March 8, 2021, father appeared at the detention hearing on the supplemental hearing and asked the court to assess his sisters, Cassandra and Marissa, for placement. The juvenile court continued the hearing and directed the parents to provide the names of relatives to the social worker that they would like considered for placement. At subsequent hearings, the court found prima facie evidence to detain the children and ordered the department to offer the parents parenting classes, substance abuse, mental health and domestic violence assessments and any recommended treatment and random drug testing. The court set a jurisdiction/disposition hearing on the supplemental petition (combined hearing) for May 19, 2021, and a family maintenance review hearing for August 18, 2021.

In its report for the combined hearing, the department recommended the juvenile court terminate all reunification efforts and set a section 366.26 hearing.

At the May 19, 2021 hearing, the juvenile court set a contested combined hearing for August 18, 2021, the date set for the family maintenance review hearing.

Beginning on August 18, 2019, the juvenile court conducted a contested combined hearing over several sessions in August 2021.[2] Social worker Brenda Basulto testified she assessed the paternal grandparents for placement. The department decided not to place the children with them because they encouraged father not to comply with services. She last spoke to the paternal grandmother on June 3, 2021, and explained why the children could not be placed with her. There was nothing the paternal grandparents could

---

[2]     The hearing was combined with a contested jurisdiction/disposition hearing regarding mother's sixth child, a son, Kevin M. (the minor), born in June 2020. Mother's boyfriend, Kevin M., was the alleged father. The minor was removed from mother's custody in March 2021. The department recommended the juvenile court deny mother and Kevin reunification services.

7.

do to have the children placed with them. The department assessed paternal aunt, Cassandra, on March 9, 2021, but the department decided not to place the children with her because of inconsistencies in her statements. The inconsistencies were discussed with her, but she was not able to explain them.

The paternal grandfather testified he and his wife finished all the programs required for placement. They purchased a larger home and car to accommodate the children but had since moved into a smaller home. They could quickly move to a larger home if the children were placed with them. He denied that the department explained to him why the children could not be placed with him and denied encouraging father not to participate in services. If the children were placed in his care, he would obey all the court's orders. He would be willing to adopt the children or enter into a legal guardianship.

Cassandra testified she completed an orientation for placement and her home was not inspected, although she asked for an inspection. She was waiting for the department's decision. She believed she could adequately raise the children and provide suitable housing. She was willing to adopt the children or assume a legal guardianship and enforce the court's orders.

The paternal grandmother testified she had a good relationship with the children. The social worker told her the department had reservations about placing the children with her but did not elaborate. No one from the department gave her the opportunity to address and discuss its concerns. She would adopt the children or be their legal guardian. She did not discourage father from participating in services.

Minors' counsel offered a stipulation that, if called, the children would testify that they wanted to be placed with relatives but were happy in their current placement. Counsel agreed to the stipulation and it was accepted by the court.

Father testified concerning what he learned in his various classes. He was employed and believed he would be better able to juggle work and the demands of raising

8.

the children if they were placed in his custody. He would also obey the court's orders. Asked what he wanted the court to know about his sobriety, he said his ability to hold down a job and support himself was evidence he did not have a substance abuse problem. If the children were not returned to him, he wanted them placed with his parents or Cassandra.

Father's attorney asked the juvenile court to place the children in his care with family maintenance services or place them with relatives. Mother's attorney objected to the children's removal and denial of services.

Before issuing its ruling, the juvenile court inquired whether the paternal grandparents and Cassandra were visiting the children and, if not, whether they requested visits. Basulto stated they were not visiting and had not requested visits.

The juvenile court removed the children from parental custody and found it would be detrimental to return them. The court denied mother further reunification services,[3] denied father's request for family maintenance services and set a section 366.26 hearing.

As to relative placement, the juvenile court found the paternal grandparents were not credible in regard to their interactions with the social workers and believed they attempted to mislead the court. The court noted that father and his parents exhibited disdain and disrespect for the department in their testimony. The court stated:

> "It is clear that the paternal grandparents have operated of a mind with the father, have advocated that he did not need to do everything, that everything was the mother's fault. That they have been verbally aggressive and threatening to law enforcement within the hearing of the children. It appears to the Court that placement with the paternal grandparents would be the equivalent of the placement with father…. [I]t is concerning to the Court that the paternal grandparents have made no requests or efforts to visit with the children."

---

[3] The juvenile court denied mother services to reunify with the minor.

Regarding Cassandra, the juvenile court expressed its concern she would surrender the children to father. In addition, she had not requested visitation or attempted to educate herself about the special mental health needs of the three oldest children.[4] The court believed placement of the children with Cassandra was the equivalent of placement with father. The court did not, however, believe that the department provided Cassandra an adequate assessment of her home and instructed it to do so and offer her supervised visitation in the event she still desired placement.

## DISCUSSION

As he did throughout the proceedings, father complains that he is the nonoffending parent. Therefore, the children were wrongfully removed from his custody. He also contends he completed his court-ordered services and faults the department and the juvenile court for not placing the children with his relatives.

### *Removal*

The juvenile court serves to protect children from harm and to preserve families when safe for the child. (§ 300.2.) In order to remove a child from parental custody, the court must first find, by a preponderance of the evidence, the actions of a parent bring the child within one of the statutory definitions set forth in section 300 and its subdivisions. (*In re Joshua G.* (2005) 129 Cal.App.4th 189, 202.) Here, the juvenile court adjudged the children minors described under section 300, subdivision (b)(1), which applies as relevant here, where "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent … to adequately supervise or protect the child, or … by the inability of the parent … to provide regular care for the child due to the parent's … mental illness …." (§ 300, subd. (b)(1).) In so doing, the court specifically found that mother endangered the children by exposing them to domestic violence with Kevin.

---

[4]     The three older children were participating in trauma-focused cognitive behavioral therapy.

10.

Father is correct that he was the "nonoffending" parent in that his conduct did not necessitate the children's removal in March 2019. Nevertheless, mother's conduct was sufficient for the juvenile court to exercise its dependency jurisdiction. At the dispositional hearing less than two months later, the juvenile court placed the children in father's custody with services.

Had father wished to challenge the juvenile court's removal of the children from mother, assuming he had standing to do so, he would have had to appeal from the court's jurisdictional findings and dispositional orders. Section 395 provides in part: " 'A judgment in a proceeding under Section 300 may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment; ….' In a dependency proceeding, the dispositional order constitutes a judgment. [Citations.] A jurisdictional finding, while not appealable, may be reviewed in an appeal from the dispositional order. [Citation.] But appellate jurisdiction is dependent upon the filing of a timely notice of appeal. [Citations.] 'An appeal from the most recent order entered in a dependency matter may not challenge prior orders, for which the statutory time for filing the appeal has passed.' " (*In re Megan B.* (1991) 235 Cal.App.3d 942, 950, fn. omitted.)

Since neither father nor mother appealed the juvenile court's removal order, it is final and not reviewable on this writ petition.

Although father's focus is on being the "nonoffending" parent, the children were removed from him in June 2019 because he was not complying with family maintenance services. Using his terminology, he *was* the "offending" parent. The children were removed because he refused to drug test. Since he did not appeal from that removal order, it is also final and not reviewable.

11.

*Detrimental Return*

Father contends he completed his court-ordered services, in effect arguing there was insufficient evidence to find it would be detrimental to return the children to his custody. We disagree.

"The dependency scheme is based on the law's strong preference for maintaining family relationships whenever possible. [Citations.] When a child is removed from parental custody, certain legal safeguards are applied to prevent unwarranted or arbitrary continuation of out-of-home placement. [Citations.] Until reunification services are terminated, there is a statutory presumption that a dependent child will be returned to parental custody." (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1400.)

However, the presumption to return is premised on a finding that doing so would not be detrimental to the child. If the court finds by a preponderance of the evidence that returning the child to parental custody would "create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child," the court must either continue reunification services if the statute allows or set a hearing under section 366.26. (§ 366.22, subd. (a)(1).)

The juvenile court may find prima facie evidence of detriment in a parent's failure to regularly participate and make substantive progress in court-ordered treatment programs. (§ 366.25, subd. (a)(1).) However, even a parent who complies with the reunification plan by completing court-ordered programs is not guaranteed the return of his or her child. The court must be satisfied that the child would be safe in parental custody. (*In re Dustin R.* (1997) 54 Cal.App.4th 1131, 1141–1143.) We review the juvenile court's finding of substantial risk of detriment for substantial evidence. (*In re Yvonne W.*, *supra*, 165 Cal.App.4th at pp. 1400–1401.)

Here, father received in excess of two years of reunification services from the date the children were initially removed from mother's custody in March 2019. Under the law, reunification services are limited to 24 months from the date the child was

12.

initially removed from parental custody.  (§ 361.5, subd. (a)(4)(A).)  By August 2021, father had received in excess of 24 months.  Although he technically complied with his services plan to the extent that he completed his assessments and recommended treatment, he refused to comply with the drug testing component of the plan.  In addition, he denied the department access to the children while they were in his custody.  Because of his noncompliance with drug testing and resistance to departmental oversight, the court could not establish the children would be safe in father's care.  Substantial evidence, therefore, supports the court's finding it would be detrimental to return the children to him.

### Relative Placement

Dependency law favors placing a child with relatives.  To that end, section 361.3, subdivision (a) requires the juvenile court when removing a child from parental custody to give preferential consideration to relatives who have requested placement. " 'Preferential consideration' means that the relative seeking placement shall be the first placement to be considered and investigated."  (§ 361.3, subd. (c)(1).)  "The relative placement preference, however, is not a relative placement *guarantee*."  (*In re Joseph T.* (2008) 163 Cal.App.4th 787, 798.)  The preference accorded by section 361.3 is not " 'an evidentiary presumption that placement with a relative is in the child's best interests' "; rather, the statute requires the juvenile court to determine whether such a placement is appropriate, applying the factors set forth in subdivision (a) of the statute.  (*In re R.T.* (2015) 232 Cal.App.4th 1284, 1295.)  "[F]irst and foremost" among those factors is " '[t]he best interest of the child, including special physical, psychological, educational, medical, or emotional needs.' "  (*In re Maria Q.* (2018) 28 Cal.App.5th 577, 592.)

Section 361.3, subdivision (a) contains a nonexclusive list of factors for the juvenile court and county social worker to consider "[i]n determining whether placement with a relative is appropriate," including "[t]he best interest of the child, including special physical, psychological, educational, medical, or emotional needs" (*id.*, subd. (a)(1));

13.

"[t]he good moral character of the relative and any other adult living in the home" including any past history of violent criminal acts or child abuse or neglect (*id*., subd. (a)(5)); "[t]he nature and duration of the relationship between the child and the relative" (*id*., subd. (a)(6)); "[t]he safety of the relative's home," (*id*., subd. (a)(8)(A)); and the relative's ability to "[p]rovide a safe, secure, and stable environment for the child," "[e]xercise proper and effective care and control of the child," "[p]rovide a home and the necessities of life for the child," and "[p]rotect the child from his or her parents" (*id*., subd. (a)(7)(A)–(D)).

"When considering whether to place the child with a relative, the juvenile court must apply the placement factors, and any other relevant factors, and exercise its independent judgment concerning the relative's request for placement." (*In re Isabella G.* (2016) 246 Cal.App.4th 708, 719.) We review the juvenile court's determination regarding a child's placement under section 361.3 for abuse of discretion. (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.)

Father contends his immediate family was never considered for placement even though they requested it. Although father does not specify when his relatives were refused placement, the record reflects that relative placement was considered from the beginning. The maternal grandmother expressed interest but required an exemption and had to go through the application process. Since there were no other relatives with whom to place the children at that time, they were placed in foster care. Within two months of their removal, the children were placed in father's custody. The next opportunity to consider relative placement occurred after the children were removed from father in June 2019. The department declined to place them with their paternal grandparents because they did not comply with the court's orders. The maternal grandmother had not applied for placement and mother stated there were no other relatives or friends who could take custody. The department had no choice but to place them in foster care where they remained until September 2020 when they were placed with mother. When the

children were removed from mother in March 2021, the department assessed father's parents and sister, Cassandra, for placement and declined to place the children with them. Relative placement was litigated at the hearing in August 2021. The juvenile court denied the paternal grandparents' and Cassandra's placement requests after considering the evidence as it related to the factors in section 361.3, subdivision (a).

We find no abuse of discretion in the juvenile court's decision not to place the children with father's relatives. The court equated placing the children with the paternal grandparents or Cassandra with placing them with father, who refused to comply with the court's orders and openly demonstrated contempt for the department. The court could not be assured that the relatives would not allow father to take custody of the children. Consequently, placing the children with father's relatives did not serve their best interests.

We find no error.

## DISPOSITION

The petition for extraordinary writ is denied. This court's opinion is final forthwith as to this court pursuant to California Rules of Court, rule 8.490(b)(2)(A).