Filed 1/19/22  In re A.S. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.S., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E076176 |
| Plaintiff and Respondent, | (Super.Ct.No. J280886) |
| v. | OPINION |
| J.S., | |
| Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Reversed.

Lelah S. Fisher, under appointment by the Court of Appeal, for Defendant and Appellant.

Michelle D. Blakemore, County Counsel, Dawn M. Martin, Deputy County Counsel for Plaintiff and Respondent.

1

J.S. (Aunt) is the paternal aunt of Ai.S.[1] (born April 2018) and A.S. (Minor, born February 2019; collectively, the children). Ai.S. lives with Aunt and his paternal grandparents (collectively Paternal Relatives); they are in the process of adopting Ai.S. Minor was removed from M.G. (Mother) when he was two months old. At that time, Paternal Relatives requested that Minor be placed with them. Aunt[2] appeals from the juvenile court's order denying the motion for order for a relative placement under Welfare and Institutions Code[3] section 361.3 (the Motion). For the reasons set forth *post*, we reverse the juvenile court's order denying the Paternal Aunt's request for placement and remand the case for the juvenile court to hold a full evidentiary hearing under section 361.3.

## FACTUAL AND PROCEDURAL HISTORY

On April 30, 2019, San Bernardino County Children and Family Services (CFS) received a referral alleging general neglect as to Minor when Mother violated her parole by testing positive for methamphetamine on April 25, 2019. When the social worker could not contact Mother after several attempts, the social worker spoke with the maternal grandmother on the telephone. Maternal grandmother stated that Mother had

---

[1] Ai.S. is not part of this appeal.

[2] Both Aunt and paternal grandmother (PGM) filed a notice of appeal. However, on May 25, 2021, we dismissed PGM's appeal for failure to file an opening brief. On July 27, 2021, we issued a partial remittitur as to PGM's appeal.

[3] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

been living at her home but left two weeks prior; she believed that Mother went to live with PGM in Moreno Valley. The social worker located Aunt's contact information through Ai.S.'s file. When the social worker contacted Aunt, she told the social worker that Mother had been at the paternal family's home the past weekend to visit with Ai.S.

Shortly thereafter, Mother contacted the social worker. Mother informed the social worker that she had gone to the paternal family's home for the weekend; she was picked up by a friend and they went to Lake Elsinore. Mother stated that she used methamphetamine on April 24, 2019. The social worker told Mother to drug test and to let the social worker know when Mother returned home; the social worker wanted to visit Minor. The following day, the social worker was unable to contact Mother; Mother did not drug test.

The social worker spoke with Mother's probation officer. The probation officer told the social worker that Mother admitted using drugs with P.S. (Father). Mother told the probation officer that she was in a relationship with Father and they use drugs together. Thereafter, CFS obtained a warrant to detain Minor, and the social worker detained him at the maternal grandmother's home; Mother was present at the time. The social worker noted that she was "not seeking to place [Minor] with [Ai.S.] until further investigation into the knowledge [Paternal Relatives] have regarding mother and father's drug use."

On May 3, 2019, the social worker reported that she planned to call a social worker in Riverside County to report the usage of drugs by Mother and Father (collectively, Parents) while visiting Ai.S. with Paternal Relatives in Moreno Valley.

3

Because of the social worker's referral and investigation of Paternal Relatives' home, the social worker noted that placement with Paternal Relatives could not be considered.

On May 6, 2019, CFS filed a section 300 petition on behalf of Minor under subdivisions (b) and (j). On May 7, 2019, Mother listed a maternal uncle as the first choice for Minor's placement and PGM as her second choice. Father listed PGM as his first choice for placement.

At the detention hearing on May 7, 2019, the juvenile court found a prima facie case for detaining Minor, and ordered him detained in the foster care home of Ms. G.

On June 4, 2019, CFS filed a jurisdiction/disposition report for the hearing on June 7, 2019. In the report, CFS recommended that Mother receive reunification services but that Father not receive services under section 361.5, subdivision (b)(10) and (b)(13). The social worker noted that Father's reunification services in Ai.S.'s dependency case in Riverside were terminated because of Father's lack of participation in his case plan. The Riverside social worker informed the social worker in this case that the Riverside social worker was also recommending the termination of Mother's reunification services at an upcoming hearing.

The social worker reported that there were two open investigations through state licensing and an abuse referral on the Paternal Relatives in Riverside County regarding Ai.S. One referral alleged that Paternal Relatives had allowed Father to have unsupervised visits with Ai.S. in their home. The licensing investigator indicated that she would be substantiating the referral because Mother provided pictures showing Parents having an unsupervised visit in the home. Paternal Relatives "denied that [the

4

unsupervised visits] occurred, but said it was possible." The social worker noted that the pictures were enough to remove Ai.S.'s placement with them. The social worker could not place Minor in Paternal Relatives' home while there were open investigations. The referrals would need to be closed as unfounded. In the interim, Minor continued to reside in Ms. G.'s home.

At the June 7, 2019, jurisdiction/disposition hearing, the juvenile court sustained the section 300 petition, ordered reunification services for Mother, and denied services for Father.

In the status review report filed on December 3, 2019, the social worker noted that Mother had made progress in her case plan. Therefore, CFS recommended an additional six months of reunification services. Minor continued to be placed with Ms. G.; she provided him with "excellent care."

The social worker noted that Paternal Relatives continued to want Minor placed with them. The referral that alleged Parents were allowed to have unsupervised visits with Ai.S. at Paternal Relatives' home was closed on June 21, 2019, as inconclusive. CFS noted: "Because of this finding, it is unlikely that they will get placement even though they are family but a background check through Relative Family Approval is still being processed."

At the December 9, 2019, six-month review hearing, the juvenile court continued Mother's reunification services and granted her four weekly unsupervised visits.

In a detention report filed on April 17, 2020, the social worker noted that Mother was granted family maintenance services on April 1, 2020, and Minor was returned to her

care in the maternal grandmother's home.  Two weeks later, however, a maternal aunt reported that Mother was dropped off at work in the early morning of April 13, 2020, and had not been heard from since then.  Therefore, CFS detained Minor and filed a section 387 petition alleging that Mother (1) failed to return home for over 48 hours; and/or (2) failed to make provisions for Minor's care; and was suspected of using methamphetamine.  CFS recommended that Minor be placed back with Ms. G. and reported that two relative placements were unable to be cleared "for various reasons."

On June 18, 2020, Minor's foster parents filed a request for de facto parent status. They stated that "[Minor] is a vital part of our family and we take care of him at all times. [¶] . . . [Minor] is . . . pretty much the center of our family. . . .  He is our son."  The following day, Aunt, PGM, and two other paternal aunts filed relative information forms (JV-285) with the court.  Aunt requested that Minor be placed with her:  "We want the siblings to grow up together, bond and not be separated.  They deserve a chance to live and grow together."  She also stated, "I was told it didn't matter to separate them because they're little they don't know anything.  It didn't matter if they had a bond because he has a stronger bond with foster mom."

In a jurisdiction/disposition report filed on June 24, 2020, CFS recommended that Mother's family reunification services be terminated and a section 366.26 hearing be set for the adoption of Minor by his foster parents.  In the report, the social worker noted that Minor could not be placed with Paternal Relatives because Parents were allowed to have unsupervised visits with Ai.S. at Paternal Relatives' home.  Mother provided pictures that showed the unsupervised visits with Ai.S.  Although Ai.S. could be removed from his

6

placement with Paternal Relatives, the Riverside County social worker had not done so. The social worker in this case, however, noted that Minor could not be placed with Paternal Relatives because of the "hold" on the home.

The social worker also noted that Minor's foster parents were "extremely bonded" to him, and that he "lights up when he sees the caregivers and enjoys being up in their arms." The social worker opined that Minor's placement with the foster parents would be the best placement for him, and that they would remain in contact with Minor's biological family.

In the addendum report filed on June 29, 2020, CFS noted that Paternal Relatives were not cleared for Minor's placement at the time of his second removal from Mother in April of 2020, and he was placed with Ms. G. At that time, CFS submitted emergency placement requests for the paternal grandparents and Ms. G. CFS received an email the same day, that the paternal grandparents' home was on "hold" by Riverside County and the home was at capacity. After Minor's placement with Ms. G., CFS received several placement requests from Paternal Relatives. On June 3, 2020, the paternal grandparents' home was approved after the inconclusive referrals were cleared and a capacity increase was granted. Therefore, CFS decided to have a family team meeting to discuss the potential placement of Minor in the paternal grandparents' home. The meeting was attended by the social worker, Mother, the maternal grandmother and aunt, the paternal grandparents, Aunt, and the foster family.

After the meeting and evaluating the section 361.3 factors, CFS opined that it was in Minor's best interest to remain with the foster parents. The social worker noted that

7

Minor was bonded to the foster family, and they had been providing him with excellent care. When Minor returned to Mother under family maintenance for two weeks, the foster family maintained video contact with Minor since they considered him a part of their family. When Minor returned to the foster family, he showed emotional distress behaviors, which his primary physician compared to posttraumatic stress disorder. Minor, however, no longer showed the stressful behaviors, which showed that he felt safe and secure in the foster family's home.

Mother also stated that she preferred that Minor remain with the foster family. Mother objected to Minor being placed with Paternal Relatives because she did not believe that they would maintain contact with the maternal relatives. Moreover, Mother was concerned that when CFS removed its supervision, Father would be allowed to return to Paternal Relatives' home, continue to do drugs, and have complete access to the children. Mother knew that the paternal family continued to have contact with Father and she did not feel that the family would uphold strong boundaries with Father. The rest of the maternal family members also did not want Minor placed with the paternal family because they feared losing all contact with Minor; the maternal family members continued to have a working relationship with the foster family.

When CFS considered placing Minor with Ai.S. in Paternal Relatives' home, the social worker noted that the siblings had never resided together, and that Paternal Relatives were unlikely to allow regular contact between the children and Mother, or facilitate services if ordered by the court. Although Paternal Relatives maintained

8

supervised visits with Minor, they had not demonstrated a parent/child bond with him like the foster family.

CFS also questioned the moral character of Paternal Relatives. PGM admitted that she and the family had offered Mother to sign over custody of Minor to them during the dependency case. They also offered to purchase Mother a car and promised her visits if she agreed that Minor should be placed with them. CFS also had concerns regarding their protective capacity since they allowed Father into their home with unsupervised visits.

On June 30, 2020, the juvenile court granted the foster family's de facto parent request.

On August 11, 2020, Aunt and PGM filed the Motion, requesting a section 361.3 hearing. Aunt declared that she cared for Minor on a regular basis prior to his removal from Parents' care. She said CFS failed to notify her when Minor was removed, and she had repeatedly contacted CFS to place Minor in her care. Although Aunt was initially told that the house was not approved, shortly thereafter a Resource Family Approval worker assessed and approved the home the same day.

At the October 6, 2020, jurisdiction/disposition hearing, the juvenile court sustained the section 387 petition allegations, denied Parents' reunification services, and set the matter for a section 366.26 hearing. The court then considered the Motion. CFS argued that it was in Minor's best interest to remain in his foster placement because he had lived with them since birth, except for a brief two-week period when he was returned to Mother's care under a family maintenance plan. The foster parents took good care of

Minor and they were bonded to each other. The foster family wanted to adopt Minor and they would continue to allow visits with Minor's biological families. Moreover, CFS expressed concern with PGM's actions to obtain custody of Minor, including offering to purchase a car for Mother. Paternal Relatives were not allowing maternal relatives to visit or contact Ai.S.

Aunt argued about the sibling bond relationship between Ai.S. and Minor. Ai.S. had been placed with Paternal Relatives with no incidents, and Paternal Relatives were willing to work with the maternal relatives.

After hearing argument, the juvenile court noted that Paternal Relatives were not cleared for a length of the time for Minor's placement, and in the interim, Minor bonded with his foster parents. Minor identified the foster parents as his mother and father, and he exhibited symptoms of posttraumatic stress disorder when he was removed from them. The court was also concerned as to Paternal Relatives' ability to protect Minor. Moreover, the court did not believe that the siblings shared a common bond. The court, therefore, believed that it would be harmful to remove Minor from his placement with the foster family and denied the Motion.

On November 24, 2020, Aunt filed a timely notice of appeal.

## DISCUSSION

In this case, Aunt argues that she and PGM "were entitled to an evidentiary hearing on the Motion and the juvenile court committed reversible error in denying them this hearing." We agree.

10

We review the juvenile court's decision on relative placement for abuse of discretion. (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.) In connection with its placement order, "the court is given wide discretion and its determination will not be disturbed absent a manifest showing of abuse. [Citations.] 'Broad deference must be shown to the trial judge. The reviewing court should interfere only " 'if we find that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did.' " ' " (*Alicia B. v. Superior Court* (2004) 116 Cal.App.4th 856, 863.)

Section 361.3 mandates that, when a child is taken from the physical custody of his or her parents, "preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative." (§ 361.3, subd. (a).) " 'Preferential consideration' means that the relative seeking placement shall be the first placement to be considered and investigated." (§ 361.3, subd. (c)(1); *In re Sarah S. (*1996) 43 Cal.App.4th 274, 286 [preferential consideration places the relative at the head of the line when the court is determining which placement is in the child's best interest].) However, the relative placement preference established by section 361.3 does not constitute "a relative placement *guarantee*." (*In re Joseph T. (*2008) 163 Cal.App.4th 787, 798.) Although the statute does not ensure relative placement, it does "express[] a command that relatives be assessed and *considered* favorably, subject to the juvenile court's consideration of the suitability of the relative's home and the best interests of the child." (*In re Stephanie M. (*1994) 7 Cal.4th 295, 320; see § 361.3, subd. (a)(1) [social

worker and the juvenile court must consider, inter alia, whether placement of the child with the relative is in the child's best interest].)

Section 361.3 identifies the factors that the court and social worker must consider in determining whether the child should be placed with a relative, including the child's best interests, the parents' wishes, the good moral character of the relative and any other adult living in the home, the nature and duration of the relationship between the child and the relative, the relative's desire to provide legal permanency for the child if reunification fails, and the relative's ability to protect the child from his or her parents. (§ 361.3, subd. (a)(1)-(8); *Cesar v. Superior Court* (2001) 91 Cal.App.4th 1023, 1033.) The juvenile court is required to consider the factors identified in section 361.3, subdivision (a) "in determining whether placement with a particular relative who requests such placement is appropriate." (*In re Antonio G. (*2007) 159 Cal.App.4th 369, 377, fn. omitted.) However, the "linchpin of a section 361.3 analysis is whether placement with a relative is in the best interests of the minor." (*Alicia B. v. Superior Court*, *supra*, 116 Cal.App.4th at pp. 862-863.)

Accordingly, " 'regardless of the relative placement preference, the fundamental duty of the court is to assure the best interests of the child, whose bond with a foster parent may require that placement with a relative be rejected.' [Citation.] Section 361.3 does not create an evidentiary presumption that relative placement is in a child's best interests. [Citation.] The passage of time is a significant factor in a child's life; the longer a successful placement continues, the more important the child's need for continuity and stability becomes in the evaluation of [his or] her best interests." (*In re*

*Lauren R.* (2007) 148 Cal.App.4th 841, 855; *In re R.T.* (2015) 232 Cal.App.4th 1284, 1295.)

Aunt alleges that the court erred in refusing "to permit the calling of witnesses" and by accepting "CFS's representation that delays in assessing the relatives' home was justified." We agree.

In this case, the record unequivocally shows that Paternal Relatives were willing and eager to have Minor placed with them since his removal from Mother. Ai.S., who is only 10 months older, was already placed with Paternal Relatives and their home was approved by Riverside County. In May of 2019, however, CFS contacted Riverside County alleging that Mother used drugs with Father "while visiting [Paternal Relatives'] home" and "while visiting the child placed with [P]aternal [R]elatives in Moreno Valley." Due to this referral on Paternal Relatives' home, an investigation was opened and placement with Paternal Relatives could not be considered. But by December of 2019, when Minor was about 10 months old, the referrals had been closed as "inconclusive" by Riverside County. Moreover, Ai.S. remained with Paternal Relatives throughout the investigation. Notwithstanding the referrals being found as inconclusive and closed, CFS indicated that Paternal Relatives would not get placement of Minor because of the inconclusive finding; CFS continued to process a background check of the Paternal Relatives through Resource Family Approval.

Thereafter, Minor was briefly returned to Mother's care under a family maintenance plan in April 2020. He, however, was detained again two weeks later. CFS noted that it submitted emergency placement requests for the paternal grandparents at that

13

time, but CFS received notification that the paternal grandparents' home was on "hold" by Riverside County and the home was at capacity. On June 3, 2020, just two months later, the paternal grandparents' home was approved after the inconclusive referrals were cleared and a capacity increase was granted.

Subsequently, CFS held a family team meeting to discuss the potential placement of Minor at the paternal grandparents' home. CFS, however, opined that it was in Minor's best interest to remain with the foster parents after evaluating the section 361.23 factors. The court then considered and denied the Motion. The court stated: "So for all those reasons, and for the reasons stated in 361.3 analysis provided that I agree with, I think it would be harmful to remove [Minor] to place him with relatives. I think [Minor] would definitely suffer, and it would not be something that would be a temporary thing. I think it would be a detriment to the child. So I will deny that." The court relied solely on the evidence provided by CFS, and did not allow Aunt and PGM to testify or submit evidence prior to making its determination.

On appeal, Aunt argues that the court erred in failing to hold an evidentiary hearing on the Motion. We agree. Here, the juvenile court only reviewed the reports filed by CFS regarding the best placement for Minor. The court refused the Paternal Relatives an opportunity to present evidence when it was undisputed that (1) the Paternal Relatives had requested that Minor be placed with them since the beginning of the dependency; (2) CFS's referrals filed against the Paternal Relatives were found inconclusive and closed by Riverside County just five to six months after the referrals were lodged; (3) CFS failed to follow up with Riverside County to assess the Paternal

14

Relative's home; (4) CFS never assessed or visited Paternal Relatives' home; (5) Paternal Relatives' home had finally been approved by June of 2020; and (6) Ai.S. continued to reside at the Paternal Relatives' home and was never removed from the home during this dependency. The juvenile court had a duty to make an independent assessment under section 361.3, without simply rubber-stamping the CFS report. Only after taking all the evidence into consideration could the juvenile court make a finding.

Therefore, for the reasons set forth above, the case should be remanded for an evidentiary hearing before considering placement for the Minor.

## DISPOSITION

The juvenile court's order denying placement of Minor with Aunt is reversed. The case is remanded for the juvenile court to hold a full evidentiary hearing to consider the relative placement issues under section 361.3, subdivision (a).

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
Acting P. J.

We concur:

SLOUGH _____
J.

RAPHAEL _____
J.

15