Filed 1/31/23  In re H.O. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| In re H.O., a Person Coming Under the Juvenile Court Law. | C095838 |
| PLACER COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>A.F.,<br><br>        Defendant and Appellant. | (Super. Ct. No. 53-005046) |

A.F., paternal grandmother (grandmother) of the minor, H.O., appeals from the juvenile court's order denying her request that the court place the minor with her.  (Welf. & Inst. Code, §§ 361.3, 388, 395.)[1]  We will affirm.

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

## FACTUAL AND PROCEDURAL HISTORY

Following H.O.'s birth in August 2019, she was placed in the neonatal intensive care unit for the first month of her life to detox from the methadone her mother, C.O. (mother), was taking during pregnancy. When H.O. was seven and a half months old, she ingested mother's fentanyl, was hospitalized, and removed from mother's care. For a two-month period, during which mother was actively using fentanyl and methamphetamine, grandmother would visit H.O. and mother for hours at a time, reportedly unaware that mother was using substances. On March 28, 2020, H.O. was released from her second hospitalization due to drug exposure, removed from mother's care by the Placer County Department of Health and Human Services (the Department), and placed into emergency foster care with her current foster family. Following the jurisdiction and disposition hearing, H.O. was moved into relative placement with her maternal great-aunt after mother requested this placement. At the time of the hearing, paternity had yet to be established, so grandmother was not considered for relative placement.

From March 2020 through October 2020, grandmother did not see H.O. In September of 2020, the maternal great-aunt became overwhelmed in caring for H.O. and gave notice that she could no longer serve as placement for her. H.O. returned to her initial foster family at the end of September 2020, where she has remained since. There were no other family members who were Resource Family Approval (RFA) approved and available to take placement of H.O. at the time. Grandmother requested placement and was referred to complete the RFA process. The Department began considering grandmother for placement. However, grandmother lived in the Bay Area and mother was still receiving reunification services, and the distance between mother and H.O., if she were placed with grandmother, was considered a barrier to reunification. Around this time, H.O.'s father, J.F. (father), was released from custody, and mother expressed

concerns that father was living with grandmother and about father's substance use. Father had told the social worker that he was living with grandmother. Due to these factors, the Department reported that it was in H.O.'s best interest to remain placed with the foster family who had previously cared for her from March through July 2020. Grandmother continued to pursue RFA approval but was not approved until January 2021. On June 8, 2021, mother reported to the social worker that if she were unable to reunify with H.O., she would like H.O. to stay with her foster parents.

On October 1, 2021, mother filed a request to change court order, pursuant to section 388, requesting that H.O. be placed with grandmother. On November 17, 2021, a contested 18-month review hearing was held, and reunification services were terminated as to mother.

Prior to the hearing on mother's section 388 motion, on November 18, 2021, the Department filed a "361.3 Placement Report," recommending that the juvenile court find that placement with grandmother was not appropriate at that time and that it was in H.O.'s best interest to remain placed with her current foster family. The report set forth that H.O. has lived in her current placement, at the time, for more than 16 out of the 19-months-long dependency proceedings. H.O. had a strong bond with her foster family and looked to them for nurturance and to meet her daily needs, and the Department contended it would be disruptive to H.O.'s current attachments and could cause undue confusion, stress, and anxiety were a change in placement to occur. H.O. suffered from developmental delays and sensory issues, and the foster family had demonstrated specific attention to H.O.'s needs by advocating for services in these areas. Additionally, the report set forth concerns about placing H.O. with grandmother, including lack of firm boundaries with father, who had struggled with substance abuse and has a history of criminal activity and incarceration. The report noted that there was uncertainty regarding grandmother's ability to properly assess for safety and risk and protect H.O. from her biological parents.

3

At the contested hearing on January 13, 2022, counsel for the Department submitted on the recommendations in its section 361.3 placement report. Counsel for H.O. joined with the recommendations and statements contained within the report. Grandmother joined in mother's section 388 motion and in the contested 361.3 placement request. Grandmother testified she travelled about two hours and 15 minutes each way (from Redwood City to Placer County) for her visits with H.O. every other week, and she never missed a visit. The social worker testified that in June and August of 2021, she had discussed with mother, mother's wishes with respect to H.O.'s placement. Mother indicated that if she were unable to reunify with H.O., she wanted H.O. to remain with the current foster parents.

At the conclusion of the contested hearing, counsel for H.O., counsel for the Department, counsel for grandmother, and counsel for mother presented argument to the juvenile court specifically addressing factors set forth in section 361.3. In taking the matter under submission, the juvenile court advised that it would "have to look at the factors under 361.3."

At the continued hearing on January 26, 2022, the juvenile court indicated that it had reviewed the cases referenced in the parties' arguments, specifically citing cases addressing section 361.3 factors. The court noted that grandmother was not considered for placement at the time of disposition because paternity had not been established. The court then reasoned that while mother and grandmother contend the court failed to make findings under section 361.3, the court was never requested to make these findings until mother filed the section 388 motion following her August 2021 arrest, when it was clear reunification services would be terminated. The court noted that mother had submitted on the recommend placement for H.O. at all prior hearings and did not raise the issue of placement with grandmother until this late juncture.

When assessing the section 361.3 analysis, the juvenile court reasoned: "This [c]ourt is tasked with assessing placement with [grandmother] under [section] 361.3, and

4

as the parties have discussed, [section] 361.3 has multiple prongs. First, it has to determine the best interest of the minor including special physical, emotional and psychological needs. . . . [¶] Next, the [c]ourt has to consider the wishes of the parents and the child and also the very specific list of factors under Section 6." The court noted it found no issues with grandmother as a potential placement, stating, "I have no concern about her willingness or ability to care for H.O." The court observed: "[T]he parties have waited over a year to bring the issue to the [c]ourt. Multiple hearings have passed in which mother submitted to the plan. . . . [H.O.] has lived with her resource parents for 20 out of the 29 months of her life. . . . [¶] The [c]ourt has not received any evidence how it is in [H.O.'s] best interest to be placed with grandmother other than the overriding argument that it is best for [H.O.] to live with family." The court considered mother's wishes but concluded that it was not in H.O.'s best interest to disrupt her life again after she had been in a stable placement for 15 months. The court denied the placement request.

Grandmother filed a timely notice of appeal.

## DISCUSSION

Grandmother contends the juvenile court erred in denying placement of H.O. with her. She argues it was an abuse of the juvenile court's discretion to deny her placement under section 361.3 and find that placement with her was not in H.O.'s best interest. Specifically, she contends the court failed to examine each of the factors in section 361.3, instead focusing on a " 'generalized best interest test,' " and this was reversible error. We reject her claims of error.

The section 361.3 relative placement preference requires "preferential consideration" be given to a relative's request for placement of a dependent child. (§ 361.3, subd. (a).) " 'Preferential consideration' means that the relative seeking placement shall be the first placement to be considered and investigated." (§ 361.3, subd. (c)(1).) "Preferential consideration 'does not create an evidentiary presumption in favor

5

of a relative, but merely places the relative at the head of the line when the court is determining which placement is in the child's best interests.' " (*In re Antonio G.* (2007) 159 Cal.App.4th 369, 376.) "[T]he statute express[es] a command that relatives be assessed and *considered* favorably, subject to the juvenile court's consideration of the suitability of the relative's home and the best interests of the child." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 320.) But this command is not a guarantee of relative placement. (*In re Joseph T.* (2008) 163 Cal.App.4th 787, 798.)

"The relative placement provisions in section 361.3 apply when a child is taken from [his or] her parents and placed outside the home pending the determination whether reunification is possible. [Citation.] The relative placement preference also applies to placements made after the dispositional hearing, even when reunification efforts are no longer ongoing, whenever a child must be moved." (*In re A.K.* (2017) 12 Cal.App.5th 492, 498.) It is less clear whether, and under what circumstances the relative placement preference applies after reunification services have been denied or terminated but when no new placement of the child is required. (See *In re Stephanie M., supra*, 7 Cal.4th at p. 321; *In re R.T.* (2015) 232 Cal.App.4th 1284, 1300; *In re Joseph T., supra*, 163 Cal.App.4th at p. 795; *In re Isabella G.* (2016) 246 Cal.App.4th 708, 723.) We note that H.O. returned to her foster family at the end of September 2020, where she has remained since, and grandmother had not completed the RFA process at the time of that placement change.

Here, after reviewing the Department's report, considering grandmother's and the social worker's testimony, and hearing argument from counsel, the juvenile court found placement with grandmother was not in H.O.'s best interest at that time. We review that decision for abuse of discretion, and we will not disturb the decision unless it exceeds the bounds of reason. (*In re Stephanie M., supra*, 7 Cal.4th at p. 318; *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067; *In re A.S.* (2009) 180 Cal.App.4th 351, 358.)

6

In assessing a request for relative placement under section 361.3, the statute provides for several factors to be considered by the Department and juvenile court. These criteria include but are not limited to: the child's best interest (§ 361.3, subd. (a)(1)); the wishes of the parent and the relative (*id.*, subd. (a)(2)); the good moral character of the relative and any other adults living in the home (*id.*, subd. (a)(5)); the nature and duration of the child-relative relationship, and the relative's desire to care for the child and provide permanency if reunification is unsuccessful (*id.*, subd. (a)(6)); the relative's ability to provide a safe, secure, and stable home environment, as well as the necessities of life; to protect the child from the parents; and to facilitate reunification, relative visitation, and implementation of the case plan (*id.*, subd. (a)(7)-(8)).

Here, the juvenile court specifically noted mother's and grandmother's wishes to have H.O. placed with grandmother. The court also observed that it had no concerns about grandmother's willingness or ability to care for H.O. The court also noted facts relevant to grandmother's moral character, including that "[s]he presented herself in a very forthright manner," participated in all visits, and wanted to be involved in H.O.'s life. The court also discussed facts regarding grandmother's ability to provide a safe and stable home environment and protect H.O. from the parents, noting it was not "concerned about her ability to keep boundaries with her son." While these section 361.3 statutory factors are important, the "linchpin" is always the best interests of the child. (*In re Robert L., supra*, 21 Cal.App.4th at p. 1068.) Here, the court noted that H.O. had already suffered significant trauma and disruption in her young life because she was removed from mother's care under life-threatening circumstances, briefly moved from the foster family to a relative placement, and then moved back to the foster family again when the relative placement failed. The court found that it was not in H.O.'s best interest to disrupt her placement again where she had been in stable placement with the foster parents for 15 months, and a total of 20 out of 29 months of her life. Further, the court observed that while grandmother's visits with H.O. were positive, H.O. had never spent

7

an overnight with grandmother, and grandmother did not act in a parental capacity or as a day-to-day caregiver. Finally, there was testimony from the social worker that if H.O. were to be placed with grandmother, there could be an approximate 120-day lapse in H.O. receiving her developmental services. This testimony supported the court's findings.

Further, we disagree with grandmother's argument that the juvenile court "neglected to address the egregious failure of the Department to comply with its obligation to assess [g]randmother in a timely manner." The record shows that at the time of the disposition hearing, paternity had yet to be established, so grandmother was not considered for relative placement. H.O. was instead placed with another relative and when that placement failed, no other relatives—including grandmother—were RFA-approved and available to take placement of H.O. at the time. Subsequently, grandmother was referred to complete the RFA process, and the Department began considering grandmother for placement. However, while mother was still receiving reunification services, the geographic distance between mother and H.O., if H.O. were to be placed with grandmother, was considered a barrier to mother's reunification with H.O. Additionally, there were concerns at that time that father was living with grandmother. As the court noted, it was never requested to make these findings until mother filed the section 388 motion. Indeed, mother was supportive of H.O.'s placement with the foster parents up until that time, submitted on the Department's placement recommendation during the prior hearings, and did not raise the issue of placement with grandmother until shortly before the 18-month review hearing.

As set forth above, the juvenile court found that it was not in H.O.'s best interest to be placed with grandmother at this time. "The overriding concern of dependency proceedings . . . is not the interest of extended family members but the interest of the child. '[R]egardless of the relative placement preference, the fundamental duty of the court is to assure the best interests of the child, whose bond with a foster parent may

8

require that placement with a relative be rejected.' [Citation.] Section 361.3 does not create an evidentiary presumption that relative placement is in a child's best interests. [Citation.] The passage of time is a significant factor in a child's life; the longer a successful placement continues, the more important the child's need for continuity and stability becomes in the evaluation of [his or] her best interests." (*In re Lauren R.* (2007) 148 Cal.App.4th 841, 855.) We find no abuse of discretion.

## DISPOSITION

The orders of the juvenile court are affirmed.

                                        /s/
                                EARL, J.

We concur:

        /s/
ROBIE, Acting P. J.

        /s/
HOCH, J.*

---

* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.