Filed 11/3/23 Certified for Publication 11/30/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re K.B. et al., Persons Coming Under the Juvenile Court Law. | |
| SOLANO COUNTY HEALTH AND SOCIAL SERVICES DEPARTMENT, Plaintiff and Respondent, v. D.B., Defendant and Appellant. | A167385 (Solano County Super. Ct. Nos. J45625 & J45626) |

D.B. (Mother) appeals from the juvenile court's jurisdiction and disposition orders in the dependency proceedings regarding her two sons, K.B. and K. (Minors). Specifically, Mother challenges the court's dispositional findings that the Solano County Department of Health and Social Services (Department) exercised due diligence to identify, locate, and contact Minors' relatives. We agree that there was insufficient evidence to support the due diligence findings and so we reverse them. We affirm the orders in all other respects.

1

# BACKGROUND

## A. *Petition and Detention*

Mother gave birth to K.B. in August 2022. Both she and K.B. tested positive for amphetamines, methamphetamines, and marijuana at the hospital, triggering a referral to the Department. The hospital admitted K.B. to the neonatal intensive care unit and the Department placed him in temporary protective custody. Mother left the hospital. Law enforcement subsequently found Mother and Minors' father (Father) at the family home and arrested both of them on out of county warrants. Law enforcement took one-year-old K. into protective custody with the Department.

The Department filed a dependency petition alleging Minors were within the jurisdiction of the juvenile court because they were at substantial risk of serious harm due to their parents' ongoing substance abuse. (Welf. & Inst. Code, § 300, subds. (b), (j).)[1] The August 16, 2022 detention report indicated that Minors' parents had moved to Arkansas the year before "with support from the paternal family members" so Mother "could get away from Vallejo and her addiction." In the intervening months, Minors' parents returned to California "to obtain housing."

The report indicated that the social worker had contacted the maternal grandmother as part of the Department's inquiry into Minors' Native American ancestry under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). Maternal grandmother stated she was not aware of any such ancestry. The report does not indicate that the social worker discussed anything else with the maternal grandmother. A later section of the report

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

regarding relative placement information contained a single sentence: "There are relatives to consider for placement at time of detention."

At the August 17, 2022 uncontested detention hearing, the juvenile court found the Department had made a prima facie case that Minors came within section 300 and that returning them to parental custody was contrary to their welfare. The court found the parents presented a substantial danger to Minors' physical or emotional health, and there were no reasonable means to protect their health absent removal. The court ordered Minors detained. It ordered "suitable licensed" placement for Minors because "a relative who is able, approved, and willing to care for the children is not available." The court noted: "This is a temporary finding. It does not preclude later placement with a relative, pursuant to section 361.3."

## B. *Jurisdiction and Disposition*

In its September 22, 2022 jurisdiction and disposition report, the Department recommended that the juvenile court sustain the allegations against both parents, order the continued detention of Minors, and order reunification services for the parents. The Department placed Minors in a non-relative foster home.

According to the report, the social worker discussed relative placement with each parent on September 1, 2022. It stated that Mother "was unable to identify any relatives to be considered for placement," but "reported that the maternal grandmother, and other relatives reside in Mississippi." Father stated that "he has relatives in the state of Arkansas that may be placements [*sic*] options in the future" but "at this time, he was unable to identify any relatives in California for placement."

The report indicated that the social worker had contacted the paternal grandmother on September 12, 2022, as part of the Department's ICWA

3

inquiry. The paternal grandmother reported that she lives in Arkansas. She has cared for Minors' eight-year-old half sister since she was a baby. The paternal grandmother confirmed that Minors' parents live together in Vallejo, and reportedly stated that Father is a " 'weed head' " who is " 'loyal to his women,' " and Mother " 'comes and goes' " while Father cares for the Minors. The paternal grandmother did not know if Father used other substances and did not believe that he knew of Mother's substance abuse. The paternal grandmother indicated that Father had two other children whose mother also "abuses substances." The report does not indicate that the social worker discussed anything else with the paternal grandmother.

The report also detailed a meeting with the parents on September 20, 2022 to identify permanency options and a concurrent plan for Minors should reunification not occur. It states: "The parents identified several concurrent options with the maternal grandmother, paternal grandmother, maternal aunt, and a family friend. It is noted the grandmothers reside out of state in Arkansas and Mississippi. The Department will continue to work with the family in concurrent planning."

At the contested January 20, 2023 jurisdiction and disposition hearing, the parties stipulated to the reading of written statements by the parents into evidence and otherwise submitted on the documents. Mother's statement indicated that she sought the opportunity to show she was a "fit parent," and wanted to get involved in drug court to find "guidance and support" to reunify with Minors. Father stated his belief that "these issues can be addressed without the removal and continued deprivation of family quality and ability to work on our family issues with our children home with us." Mother's counsel objected to jurisdiction and requested family maintenance, while counsel for Father stated that he was "willing to accept"

4

family reunification. The Department's investigation regarding relatives was not raised by any of the parties or the court.

The juvenile court sustained the Department's allegations under section 300, subdivisions (b) and (j). The court declared Minors dependents. It ordered that the Department offer reunification services to both parents. The court stated that it would "set this matter for interim review in three months. And we can revisit placement on that day." During the hearing, neither parent voiced concern or raised an objection regarding the Department's investigation of Minors' relatives.

In its written dispositional findings and orders dated January 23, 2023, the court checked the box: "The county agency has exercised due diligence to identify, locate, and contact the child's relatives." The written orders also authorized placement of Minors in a foster home, relative home, or nonrelative extended family member home.

This appeal followed.

## DISCUSSION

Mother's appeal presents a narrow challenge to the juvenile court's dispositional findings that the Department exercised due diligence to identify, locate, and contact Minors' relatives. The Department offers three alternative arguments in response: (1) Mother has forfeited her challenge; (2) the due diligence findings are supported by substantial evidence; and (3) any error in making the findings was harmless. We address, and reject, each argument in turn.

### I. No Forfeiture

The Department contends that Mother forfeited her challenge to the juvenile court's due diligence findings. "It is true that, as the Department contends, a reviewing court ordinarily will not consider a challenge to a

5

ruling if an objection could have been but was not made in the trial court." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) But application of this general rule is not reasonable under the circumstances reflected in the record here.[2]

Mother had no notice of the due diligence findings, either before or at the time they were entered. The juvenile court made no due diligence finding at detention. Then, in its jurisdictional/dispositional report, the Department asked the court to "accept the proposed Findings and Orders that are submitted with this report." But, as the Department concedes, there is nothing attached to that report (or otherwise in the record before us) that includes any proposed due diligence findings. Neither the parties nor the court discussed the due diligence findings at the jurisdictional and dispositional hearing. Instead, it appears that these findings were reflected for the first time in the written orders after the hearing.

We agree that the parents' collective failure to mention, let alone object to, the due diligence findings is troubling. It is also telling that, despite the passage of time, even in her appellate briefing, Mother does not suggest any potential placement for Minors with any particular relative. That said, as discussed below, section 309 is not conditioned on parents' cooperation and its impact is not limited to placement. It requires that the Department conduct an investigation into relatives with due diligence, and that the court find the Department has fulfilled its mandate. Imposing forfeiture to bar Mother's appeal would not be in Minors' best interests.

---

[2] Given this conclusion, we need not and do not address Mother's alternative arguments that (1) forfeiture is not applicable to challenges regarding the sufficiency of evidence at disposition, or (2) even if forfeited, we should exercise our discretion to decide the issue.

## II. No Substantial Evidence for Due Diligence Findings

### A. Standard of Review

The question of whether the Department exercised due diligence to identify, locate, and contact Minors' relatives is "primarily a factual matter" that considers the Department's efforts. (*In re S.K.* (2018) 22 Cal.App.5th 29, 36 (*S.K.*).) We therefore review the trial court's due diligence findings for substantial evidence. (*Ibid.*) "[W]e examine the whole record and ask whether any substantial evidence, contradicted or uncontradicted, supports the court's finding[s], indulging all reasonable inferences in support of it." (*Id.* at p. 37.) Substantial evidence "means evidence that is 'reasonable, credible and of solid value; it must actually be substantial proof of the essentials that the law requires in a particular case.' " (*In re E.D.* (2013) 217 Cal.App.4th 960, 966.)

### B. Relevant Law

Section 309, subdivision (e)(1) provides that, if a child is removed from parental custody, the social worker must conduct an investigation in order to identify and locate all adult relatives of the child. The social worker must use "due diligence" in investigating the names and locations of these relatives. (*Id.*, subd. (e)(3).) "[A]dult relatives" include all grandparents, adult relatives who are "suggested by the parents," and other adults who are "related to the identified child by blood, adoption, or affinity" "within the fifth degree of kinship, including stepparents, stepsiblings, and all relatives whose status is preceded by the words 'great,' 'great-great,' or 'grand,' or the spouse of any of these persons." (*Id.*, subd. (e)(1), § 319, subd. (h)(2).)

Section 309, subdivision (e)(1)(A) requires the social worker to provide written notification within 30 days of removal to all adult relatives who are located (with certain exceptions not applicable here) that the child has been

7

removed from parental custody. Section 309, subdivision (e)(1)(B) requires that the notice include "[a]n explanation of the various options to participate in the care and placement of the child and support for the child's family, including any options that may be lost by failing to respond." The social worker must provide written notification as well as "oral notification, in person or by telephone," whenever appropriate. (*Id.*, subd. (e)(1).)

In addition to the notice set forth in Welfare and Institutions Code section 309, California Rules of Court, rule 5.534(b)(3) (rule 5.534(b)(3)) requires the social worker to give any located relative a copy of the "Important Information for Relatives" document as distributed in the Department of Social Services All County Letter No. 09-86, as well as Judicial Council Forms, form JV-285 (Relative Information) and form JV-287 (Confidential Information). Among other things, form JV-285 asks relatives to identify ways in which they may want to help the child, parents, or social worker, and to provide contact information for other relatives who might be able to help the child.

Section 358, subdivision (b)(2) provides that, if the child is removed from parental custody at the time of disposition, the court "shall make a finding as to whether the social worker has exercised due diligence in conducting the investigation, as required pursuant to paragraph (1) of subdivision (e) of Section 309, to identify, locate, and notify the child's relatives." When making this finding, the court may consider examples of due diligence that include, among other things, whether the social worker has (1) obtained information about the location of relatives; (2) reviewed the case file for any information regarding relatives; (3) telephoned, emailed, or visited all identified relatives; (4) asked located relatives for the names and locations of others; and (5) used online search tools. (§ 358, subd. (b)(3)(B)–

8

(F); Cal. Rules of Court, rule 5.695(f)(2)–(6).) When the court finds the social worker has *not* used due diligence, the court may order the social worker "to exercise due diligence in conducting an investigation to identify, locate, and notify the child's relatives" and "may require a written or oral report to the court." (Cal. Rules of Court, rule 5.695(e)(2).)

## C. Analysis

The record here does not reflect substantial evidence that the Department used due diligence to identify, locate, contact, and notify Minors' adult relatives pursuant to section 309, subdivision (e) and rule 5.534(b)(3).

The Department's detention and jurisdictional/dispositional reports indicate that the social worker contacted the maternal and paternal grandmothers as part of the ICWA inquiry. The record does not reflect any actual discussion of Minors' placement or the grandmothers' interest in otherwise participating in the case. Minors' parents also identified a maternal aunt, as well as other relatives in Mississippi and Arkansas, but there is nothing in the record to show that the social worker attempted to locate or contact these relatives.

It appears that most, if not all, of these relatives live outside of California—be it in Mississippi or Arkansas. It is also entirely possible that geography would present a bar to relative placement in either of those states, since doing so could make reunification with Mother and/or Father extremely difficult and might be contrary to Minors' best interests. But nothing in the language of section 309, subdivision (e) excludes out-of-state relatives from the investigation the Department was required to perform. The Department does not contend otherwise.

The parties dispute whether the Department's investigation efforts can be appropriately analogized to those found adequate in the *S.K.* decision. In

9

that case, the mother challenged the juvenile court's due diligence finding based on the social worker's alleged failure to (1) obtain contact information for a maternal great-aunt, and (2) search records in any other dependency case involving the father to locate information about his relatives. (*S.K.*, *supra*, 22 Cal.App.5th at p. 38.) The appellate court concluded that the finding was supported by substantial evidence because the juvenile court had repeatedly ordered mother to disclose all known contact information for relatives, the social worker had repeatedly called the mother and maternal grandmother to get the maternal great-aunt's contact information without response, and the mother had limited the social worker's ability to search for the maternal great-aunt's contact information by providing the wrong last name. (*Ibid.*) The social worker had also searched multiple databases for the father, but had come up with no results. (*Ibid.*)

Here, even accepting the Department's representation that the parents have been generally "elusive" and "evasive" in this matter, *S.K.* is distinguishable. Unlike in *S.K.*, the social worker here made contact with certain relatives. But the record fails to show that the social worker acted with due diligence in providing located relatives with the necessary information, asking them about other relatives. Nor does it show that the social worker investigated other relatives identified by Minors' parents. It is possible that the social worker did not develop the record because they had rejected the possibility of any placement based on geography, but that is speculation and is not reflected in the record.

In addition to the lack of due diligence in identifying, locating, and contacting adult relatives, there is no evidence that the social worker provided any relatives (grandmothers or otherwise) with written notice of Minors' removal and an explanation of the various options to participate in

Minors' care, placement, and support as required by section 309, subdivision (e). Nor is there any evidence that the social worker provided any adult relatives with the documents required by rule 5.534(b)(3).

We are not persuaded by the Department's suggestion that there is sufficient evidence of notice because "the social worker was able to contact each grandmother to discuss the case." As a preliminary matter, the extent of any such discussion is not reflected anywhere in the record. Further, oral notice by phone does not dispel the requirement for *written* notice under section 309, subdivision (e) and rule 5.534(b)(3). (See *In re R.T.* (2015) 232 Cal.App.4th 1284, 1296 [explaining oral advisement of the "placement process" was insufficient, as "[t]here is little reason to believe that the oral advisements sufficiently informed the relatives of the many aspects of the placement process that the statute requires be conveyed in writing"].) No written notice was provided here.

### III.   Error Not Harmless

The Department argues that, even if there was insufficient evidence to support the juvenile court's due diligence findings, any error was harmless. We "typically apply a harmless-error analysis when a statutory mandate is disobeyed," where error " 'is reversible only if it is reasonably probable the result would have been more favorable to [appellant] absent the error.' " (*In re Jesusa V.* (2004) 32 Cal.4th 588, 624–625.) Here, the Department contends that any error on the due diligence findings is harmless because Mother had "various opportunities" to "raise the issue of relative assessment and/or placement," but failed to do so.

The Department's harmless error argument ignores the purposes of relative investigation beyond assessment and placement. (See *In re R.T.*, *supra*, 232 Cal.App.4th at p. 1296 [explaining that written notice of "many

11

aspects" of placement process is required].)  As explained above, section 309, subdivision (e)(1)(B) requires written notice to located relatives that includes "explanation of the various options to participate in the care and placement of the child and support for the child's family."  Among the documents required to be sent under rule 5.534(b)(3), form JV-285 lists options for relative participation beyond assessment and placement, including visits with the child, contact with the child by telephone or letter, and assistance to the social worker on the case plan for the child.  The form also allows located relatives to identify other relatives who might be able to help the child.

In sum, there is no evidence that the Department exercised due diligence in identifying and investigating Minors' adult relatives, or that any relatives (including the identified and contacted grandmothers) received the required notice detailing various options for participation.  We cannot conclude that the error on the due diligence findings was harmless.[3]

## DISPOSITION

The juvenile court's January 20, 2023 dispositional findings that the Department exercised due diligence in identifying, locating, and contacting Minors' relatives are reversed.  We remand the matter with directions for the juvenile court to (1) order the Department to exercise due diligence to identify, locate, contact, and notify Minors' relatives pursuant to section 309, subdivision (e) and rule 5.534(b)(3); (2) direct the Department to prepare a supplemental jurisdictional/dispositional report describing its additional efforts; and (3) set a continued dispositional hearing at the earliest convenient time, for the purpose of considering whether the Department

---

[3] Given this conclusion, we deem Mother's arguments related to potential future relative assessment(s) and placement to be premature.

has since exercised due diligence.  The January 20, 2023 jurisdictional and dispositional orders are affirmed in all other respects.

_____
Markman, J.*

We concur:


_____
Stewart, P.J.


_____
Miller, J.


*In re K.B. et al.* (A167385)


      * Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re K.B. et al., Persons Coming Under the Juvenile Court Law. | |
| SOLANO COUNTY HEALTH AND SOCIAL SERVICES DEPARTMENT, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> D.B., <br><br>     Defendant and Appellant. | A167385 <br><br> (Solano County Super. Ct. Nos. J45625 & J45626) <br><br> **ORDER CERTIFYING OPINION FOR PUBLICATION** |

       The opinion in the above-entitled matter, filed on November 3, 2023, was not certified for publication. For good cause, appellant's request for publication is granted.

       Pursuant to California Rules of Court, rule 8.1105, the opinion is ordered certified for publication in the Official Reports.

Dated: _____             _____

                                                  Stewart, P.J.

1

| | |
|---|---|
| Trial Court: | Solano County Superior Court |
| Trial Judge: | Hon. Dora M. Rios |
| Attorney for Defendant and Appellant: | By Appointment of the Court of Appeal Under the First District Appellate Project Mara L. Bernstein |
| Attorneys for Plaintiff and Respondent: | Office of Solano County Counsel Bernadette S. Curry Carrie Blacklock Ana Oldwin |